**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| LARGAN PRECISION CO., LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> ABILITY OPTO-ELECTRONICS TECHNOL-OGY CO., LTD., ET AL., <br><br> *Defendants*. | Case No. 4:19-cv-696-ALM |

**LARGAN'S RESPONSE TO HP'S MOTION TO DISQUALIFY**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................3

III.    LEGAL STANDARD ...........................................................................................5

IV.     ARGUMENT .........................................................................................................7

       A.      HP Fails to Satisfy Its Burden of Showing that this Case Is Substantially
           Related to Any Previous Matters in Which Mr. Allgood Represented HP. ..................7

       B.      HP Doesn't Attempt To and Can't Establish that Mr. Allgood Actually
           Possesses Any Relevant Confidential Information. ....................................................12

       C.      Although the Court Needn't Reach this Issue, Disqualifying Mr. Allgood
           Shouldn't Automatically Disqualify Fisch Sigler. ....................................................14

V.      CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Abney v. Wal-Mart*,
  984 F. Supp. 526 (E.D. Tex. 1997) ..................................................................5, 14

*Adaptix, Inc. v. Dell, Inc.*,
  No. 6:13-cv-437, 2014 WL 11730482 (E.D. Tex. Feb. 12, 2014) .......................2, 15

*Am. Special Risk Ins. Co. ex rel. S. Macomb Disposal Auth. v. City of Centerline*,
  69 F. Supp. 2d 944 (E.D. Mich. 1999) .......................................................................1

*Biax Corp. v. Fujitsu Computer Sys. Corp.*,
  No. 2:06-cv-364, 2007 WL 1466638 (E.D. Tex. May 16, 2007)....................2, 8, 11

*Cameron Iron Works, Inc. v. Hydril Co.*,
  1980 WL 30294 (S.D. Tex. Jan. 9, 1980)..................................................................12

*Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*,
  9 F. Supp. 2d 572 (W.D.N.C.1998)..............................................................................1

*Commonwealth Sci. & Indus. Research Organisation v. Toshiba Am. Info. Sys., Inc.*,
  297 F. App'x 970 (Fed. Cir. 2008) ...............................................................................6

*Culbreth v. Covington Bd. of Educ.*,
  2007 WL 3124711 (E.D. Ky. Oct. 24, 2007) ...............................................................1

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-cv-72, 2009 WL 10679840 (E.D. Tex. Dec. 30, 2009)...............................15

*Domain Prot., LLC v. Sea Wasp, LLC*,
  No. 4:18-cv-792, 2019 WL 6131298 (E.D. Tex. Nov. 19, 2019) .........................1, 5

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  646 F.2d 1020 (5th Cir. 1981) ....................................................................6, 7, 9, 11

*E-Contact Techs., LLC v. Apple, Inc.*,
  No. 1:11-cv-426, Dkt. #404 (E.D. Tex. Sept. 26, 2012) ......................................2, 11

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
  No. 2:15-cv-1202, 2016 WL 760909 (E.D. Tex. Feb. 26, 2016) ..................2, 12, 14

*Evolutionary Intelligence, Inc. v. Facebook, Inc.*,
  No. 6:12-cv-784, 2013 WL 12140485 (E.D. Tex. July 3, 2013)...............................12

*FDIC v. U.S. Fire Ins. Co.*,
  50 F.3d 1304 (5th Cir. 1995) ..............................................................................1, 5, 6

ii

*Ford Motor Co. v. Nat'l Indem. Co.*,
2013 WL 4498698 (E.D. Va. Aug. 21, 2013) ........................................................... 1

*Hewlett-Packard Co. v. Nu-Kote Int'l, Inc.*,
1995 WL 110558 (N.D. Cal. Mar. 8, 1995) ........................................................ 1, 7

*In re Am. Airlines, Inc.*,
972 F.2d 605 (5th Cir. 1992) ................................................................................ 6

*In re DataTreasury Corp.*,
2010 WL 3074395 (Fed. Cir. Aug. 5, 2010) ....................................................... 15

*Laker Airways Ltd. v. Pan Am. World Airways*,
103 F.R.D. 22 (D.D.C. 1984) ............................................................................ 7, 11

*Moyroud v. Itek Corp.*,
528 F. Supp. 707 (S.D. Fla. 1981) ....................................................................... 9

*Personalized Mass Media Corp. v. Weather Channel, Inc.*,
899 F. Supp. 239 (E.D. Va. 1995) ....................................................................... 1

*Power Mosfet Techs, L.L.C. v. Siemens AG*,
No. 2:99-cv-168, 2002 WL 32785219 (E.D. Tex. Sept. 30, 2002) ................... passim

*Secure Axcess, LLC v. Dell Inc.*,
No. 6:11-cv-338, 2012 WL 12919543 (E.D. Tex. Feb. 23, 2012) ................... passim

*Simmons v. Houston Cty., Texas*,
No. 9:05-cv-82, 2006 WL 8440543 (E.D. Tex. Feb. 2, 2006) ........................ 12, 13

*TQ Delta, LLC v. 2Wire, Inc.*,
2016 WL 5402180 (D. Del. Sept. 26, 2016) ....................................................... 5

*Tradewinds Airlines, Inc. v. Soros*,
2009 WL 1321695 (S.D.N.Y. May 12, 2009) .................................................... 14

*Watkins v. TransUnion*,
869 F.3d 514 (7th Cir. 2017) ............................................................................. 12

## I.      INTRODUCTION

A fundamental tenet of our American legal system is that a litigant has the right to use counsel of their own choosing.[1] Courts have thus long recognized that any order nullifying this right is a "severe remedy" requiring the moving party to carry a "heavy" burden.[2] This Court re-iterated this rule just last month in denying a disqualification motion in *Domain Protection v. Sea Wasp*.[3] And HP has previously advocated for the application of this rule to its benefit. In *Hewlett-Packard v. Nu-Kote International*, the Northern District of California denied a motion to disqualify HP's counsel, citing HP's right to "rely on the services of counsel of its choice" and noting that this was "especially important in the patent field."[4] Yet here HP's motion omits any reference to the heightened standard for disqualification or the Court's *Domain Protection* decision, or any basis to distinguish HP's prior arguments outside the Eastern District.

Indeed, HP's motion is more notable for what it omits than for what it includes. HP focuses on the work of an attorney who recently joined Fisch Sigler LLP after seven years as an Associate at Morgan Lewis & Bockius in Houston. This Associate, Adam Auchter Allgood, was part of a larger group of Morgan Lewis attorneys who worked on previous, unrelated HP matters

---

[1] *See Culbreth v. Covington Bd. of Educ.*, 2007 WL 3124711, at *1 (E.D. Ky. Oct. 24, 2007) ("A party's right to have counsel of its choosing is a fundamental tenet of American jurisprudence.") (quoting *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F. Supp. 2d 572, 579 (W.D.N.C.1998)); *Am. Special Risk Ins. Co. ex rel. S. Macomb Disposal Auth. v. City of Center-line*, 69 F. Supp. 2d 944, 953 (E.D. Mich. 1999) (same); *Ford Motor Co. v. Nat'l Indem. Co.*, 2013 WL 4498698, at *4 (E.D. Va. Aug. 21, 2013) (noting "fundamental principle that a party ought to be represented by its counsel of choice if that is at all possible") (quoting *Personalized Mass Media Corp. v. Weather Channel, Inc.*, 899 F. Supp. 239, 242 (E.D. Va. 1995)); *see also FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995) (noting party's right to "counsel of choice" and "attorney's right to freely practice her profession" are "important societal rights").

[2] *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-cv-792, 2019 WL 6131298, at *5 (E.D. Tex. Nov. 19, 2019).

[3] *Id.*

[4] 1995 WL 110558, at *5 (N.D. Cal. Mar. 8, 1995).

1

that all concluded over two years ago. And as HP's own evidence shows, these prior matters involved different patents, different products, different infringing subcomponents, different plaintiffs, and different suppliers. To be sure, HP doesn't aver that any of the previous matters related to the imaging-lens technology claimed in the asserted patents and accused of infringing here.

Once distilled, HP's motion identifies only that the prior matters were patent infringement cases, some of which also involved laptops and the same general kinds of institutional knowledge or strategy that any attorney who ever represented HP in patent matters would've been privy to. But in orders addressing similar facts by Judges Craven, Davis, Folsom, Giblin, and Ward, this Court has uniformly denied such motions to disqualify.[5] HP's motion mentions just one of these decisions in passing, fails to distinguish any of them, and doesn't cite any Eastern District cases going the other way.

For these reasons and as explained in more detail below, HP has failed to carry the heavy burden necessary to prevent Largan from exercising its fundamental right to litigate with its chosen counsel, and the motion should be denied.

---

[5] *E.g.*, *Secure Axcess, LLC v. Dell Inc.*, No. 6:11-cv-338, 2012 WL 12919543 (E.D. Tex. Feb. 23, 2012) (Davis, J.) (denying motion after finding patent-infringement cases involving computer networking weren't substantially related); *Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-cv-364, 2007 WL 1466638 (E.D. Tex. May 16, 2007) (Ward, J.) (denying motion after finding patent-related representations involving server architecture weren't substantially related); *Power Mosfet Techs, L.L.C. v. Siemens AG*, No. 2:99-cv-168, 2002 WL 32785219 (E.D. Tex. Sept. 30, 2002) (Folsom, J.) (denying motion after finding patent-related representations involving same kind of transistor weren't substantially related); *Adaptix, Inc. v. Dell, Inc.*, No. 6:13-cv-437, 2014 WL 11730482 (E.D. Tex. Feb. 12, 2014) (Craven, J.) (denying motion after finding, *inter alia*, that previous patent litigation involved different technology); *E-Contact Techs., LLC v. Apple, Inc.*, No. 1:11-cv-426, Dkt. #404 (E.D. Tex. Sept. 26, 2012) (Giblin, J.) (same); *see also Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202, 2016 WL 760909 (E.D. Tex. Feb. 26, 2016) (Bryson, J.) (denying motion after finding patent-infringement cases involving delivery of pharmacy services weren't substantially related).

## II.    FACTUAL BACKGROUND

This case concerns the compact, high-performance imaging lenses found in the cameras in many consumer electronic products, including smart-phones, notebooks, laptops, and tablets. Largan, the world's leading manufacturer of these lenses, has accused competitors AOET and Newmax of infringing Largan's patents on certain three- and four-lens systems. Largan has also accused HP products that incorporate the infringing AOET and Newmax lenses.[6]

HP seeks to disqualify Mr. Allgood based on allegations that, as a Morgan Lewis Associate, he represented HP or its predecessor in four "substantially related" matters between February 2015 and September 2017.[7] But HP doesn't allege that any of these cases involved imaging lenses or the supplier codefendants here, nor could it. The four matters instead involved audio-processing hardware and software;[8] radio transceivers, wireless signals, display options, and battery-charging techniques;[9] display ports;[10] and high-speed plateless printing.[11]

Each of the unrelated former matters also concluded well before Mr. Allgood's representation of Largan began.[12] In particular, the 949 ITC Investigation concluded more than two years ago, the *Nexus Display* and *Raster Printing* cases more than three years ago, and the 952 ITC Investigation more than four years ago.[13]

---

[6] *E.g.*, Dkt. #1 (Complaint) at ¶ 45.

[7] *E.g.*, Dkt. #20 (HP's sealed motion) at 2; *see also* Dkt. #24 (redacted copy of motion).

[8] Dkt. #20 at 2; *see also* Dkt. #21-1 (ITC Complaint of Andrea Electronics).

[9] Dkt. #20 at 3.

[10] *Id.* at 4.

[11] *E.g.*, *Raster Printing Innovations, LLC v. Hewlett-Packard Co.*, N.D. Ill. Case No. 1:15-cv-3967, Dkt. #1-1 (Exhibits to Raster Printing's complaint) at 20, 56, 88.

[12] Mr. Allgood joined Fisch Sigler on July 1, 2019.

[13] *See* Dkt. #20 at 3–5.

And Mr. Allgood performed all his work on those matters as part of a team of attorneys, under the supervision of one or more partners at Morgan Lewis. In the ITC investigation that occupied most of his time, according to HP, Mr. Allgood is one of seven Morgan Lewis attorneys (including three partners) listed in the signature block of the initial Notice of Appearance.[14] The filings in the other matters that HP relies on also tell a similar story.[15]

Further, because HP didn't submit any billing records in support of its motion, it provided no way to verify its assertions about how many hours Mr. Allgood worked on HP matters. But based on the limited information provided, HP's claimed "average of 71 billable hours per month" is incorrect.[16] HP also doesn't say how many Morgan Lewis attorneys worked on each matter, with or without formally appearing, how many hours they all billed, or how many emails Mr. Baca, its supporting declarant, has located with other Morgan Lewis attorneys "in the 'to,' 'from' or 'CC' address fields."[17]

Given these facts, it's unsurprising that HP doesn't allege that Mr. Allgood was the Morgan Lewis attorney principally responsible for managing any prior HP matters. Relatedly, HP's characterizations of some of the tasks that Mr. Allgood performed and his level of responsibility appear to be overstated. For instance, HP asserts that Mr. Allgood was the "primary contact" for "billing and invoicing issues" on two matters, which would be odd since he wasn't a partner at

---

[14] Dkt. #21-2 at 2.

[15] In *Nexus Display*, HP's answer lists two California-barred attorneys: Andrew Devkar, the partner who signed it, and Mr. Allgood. Dkt. #21-5. Three more Morgan Lewis attorneys then appeared *pro hac vice*, including another partner. C.D. Cal. Case 2:15-cv-2402. In the 952 Investigation, the initial Notice of Appearance lists partner Eric Namrow above Mr. Allgood. Dkt. #21-3. And in *Raster Printing*, Mr. Allgood didn't appear at all. *See* N.D. Ill. Case 1:15-cv-3967.

[16] *See* Dkt. #20 at 10. HP asserts that Mr. Allgood recorded 1,928 hours during a two-year-and-seven-month period. *Id.* But 1,928 divided by 31 months would be 62, not 71.

[17] Dkt. #20 at 5.

Morgan Lewis.[18] As detailed herein, however, HP's motion should be denied because HP failed to meet its burden, and discovery to address factual issues isn't necessary for the same reason.

## III.   LEGAL STANDARD

In its recent *Domain Protection* decision, this Court reiterated that disqualification is a "severe remedy" under longstanding precedents of the Fifth Circuit, this district, and Texas state courts.[19] As this Court further explained, disqualification is "governed by state and national ethical standards," including the ABA Model Rules of Professional Conduct and the Texas Disciplinary Rules of Professional Conduct.[20] And when a party moves to disqualify based on a former attorney-client relationship, that motion is subject to an exacting standard, and the party must bear a heavy burden. As stated in *Domain Protection*:

> Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a dilatory trial tactic. The party seeking disqualification bears the burden of proving that disqualification is warranted. That burden is heavy.[21]

Here, HP seeks to disqualify Mr. Allgood under Texas Disciplinary Rule 1.09 and ABA Model Rule 1.9.[22] Both rules forbid attorneys from appearing adverse to a former client in a "substantially related matter."[23] According to HP, the "only question" its motion raises "is

---

[18] *See*, *e.g.*, *id*. at 3, 5.

[19] 2019 WL 6131298, at *5; *accord Abney v. Wal-Mart*, 984 F. Supp. 526, 528 (E.D. Tex. 1997) (Schell, J.).

[20] *Domain Prot.*, 2019 WL 6131298, at *5 (quoting *FDIC*, 50 F.3d at 1311–12).

[21] *Domain Prot.*, 2019 WL 6131298, at *5 (internal quotations, citations, and alteration omitted); *see also TQ Delta, LLC v. 2Wire, Inc.*, 2016 WL 5402180, at *2 (D. Del. Sept. 26, 2016) ("Motions to disqualify are generally disfavored and … require the moving party to show clearly that continued representation would be impermissible.") (internal quotations omitted).

[22] *E.g.*, Dkt. #20 at 7.

[23] Texas Disciplinary Rule 1.09(a) provides in relevant part:

whether this case is 'substantially related' to the cases in which Mr. Allgood represented HP."[24]

The Fifth Circuit has for decades required movants seeking to establish a substantial relationship to make a detailed and specific evidentiary showing, subject to correspondingly comprehensive court scrutiny. In *In re American Airlines*, the Fifth Circuit stated that district courts may find a substantial relationship "only after the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent."[25] Additionally, in that same case, the Fifth Circuit explained that courts shouldn't conduct this analysis "in a mechanical way that might 'prevent an attorney from ever representing an interest adverse to that of a former client.'"[26] Thus, this court considers three factors when applying the substantial relationship test: "(1) the factual similarities between the current and former representations, (2) the similarities between the legal questions posed, and (3) the nature and extent of the attorney's involvement with the former representation."[27]

---

Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client … (3) if it is the same or a substantially related matter.

ABA Model Rule 1.9(a) provides in relevant part:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client ….

[24] Dkt. #20 at 8.

[25] 972 F.2d 605, 614 (5th Cir. 1992) (internal quotations omitted); *see also FDIC*, 50 F.3d at 1314 ("All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights.").

[26] *Am. Airlines*, 972 F.2d at 614 (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1027–28 (5th Cir. 1981)) (alteration omitted).

[27] *Commonwealth Sci. & Indus. Research Organisation v. Toshiba Am. Info. Sys., Inc.*, 297 F. App'x 970, 975 (Fed. Cir. 2008) (quoting *Power Mosfet*, 2002 WL 32785219, at *2).

## IV.    ARGUMENT

### A.    HP Fails to Satisfy Its Burden of Showing that this Case Is Substantially Related to Any Previous Matters in Which Mr. Allgood Represented HP.

It's well-established that a former client isn't entitled to disqualification merely because an attorney represented that client in matters involving the same type of legal problem or the same legal specialty. As Judge Davis stated in *Secure Axcess v. Dell*: "Cases are not substantially related just because they involve the same general subject matter and area of the law."[28] And as the comments to ABA Model Rule 1.9 further explain:

> [A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.[29]

Here, HP nonetheless suggests that there's a substantial relationship between this case and the previous matters because they "are all patent infringement litigations."[30] But that's not the law, as noted. Thus, this Court has repeatedly denied motions to disqualify in patent litigation, even where the attorney previously represented the movant in other patent-litigation matters.[31]

Indeed, under the Fifth Circuit's precedent, "the focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations."[32] That is, "a court must look behind mere facial similarities or dissimilarities between the

---

[28] 2012 WL 12919543, at *3.

[29] Model Rules, R. 1.9 cmt. 2; *see also Hewlett-Packard*, 1995 WL 110558, at *5 ("The court benefits from attorneys who have specialized knowledge in these complex patent litigations."); *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 28 (D.D.C. 1984) (explaining that although specialization makes conflict questions "arise more frequently," the judicial system "must be careful not to penalize attorneys who chose such specialties").

[30] Dkt. #20 at 9.

[31] *See* note 5, *supra* (collecting cases).

[32] *Duncan*, 646 F.2d at 1029.

prior and pending cases and focus on the precise nature of the subject matters presented in the two representations."[33] Here, because HP doesn't even argue that any previous matters were related to imaging lenses or Largan's patented technologies, HP's support for disqualification is, on its face, weaker than that in other cases where this Court has denied such motions.

For instance, in *Biax v. Fujitsu*, the movant argued "that both representations involve server architecture," but Judge Ward found that to be "too broad for purposes of establishing a substantial relationship."[34] In *Power Mosfet v. Siemens*, Judge Folsom similarly found no substantial relationship where "Power MOSFETs," a kind of transistor, were the subject of the previous litigation "and their newer versions" were at issue in that case.[35] And in *Secure Axcess*, Judge Davis found no substantial relationship where the movant "highlight[ed] the similarities between the technologies" in cases involving "computers communicating over a network."[36]

HP omits any reference to the holdings of these cases. Instead, HP argues that two of Mr. Allgood's representations involved "the same types of products"—i.e., "laptop computers and Chromebooks."[37] HP posits that this case is just like those matters, so long as one ignores the "actual sub-component that forms the basis of the infringement allegation."[38] But HP cites no legal authorities suggesting that the severe remedy of disqualifying attorneys could be based on such broad product categories, contrary to this Court's case law and the Fifth Circuit's directive that courts focus on the "precise nature of the subject matters" of current and former

---

[33] *Id.* at 1031.

[34] 2007 WL 1466638, at *2.

[35] 2002 WL 32785219, at *1.

[36] 2012 WL 12919543, at *3.

[37] Dkt. #20 at 9.

[38] *Id.*

8

representations, not "facial similarities."[39]

Further, as this Court explained in *Power Mosfet*:

Just because two devices fall into the same general category, e.g. photocopiers or Power MOSFETS, does not necessarily mean patent infringement cases in that same category will be substantially related. Indeed, [the non-movant] points out that these are highly complicated devices with different features and components.[40]

Here too, HP acknowledges that laptop computers and similar products incorporate many different components, subcomponents, and technologies. Largan has accused HP of infringement based on lens-system subcomponents incorporated into camera modules that are, in turn, incorporated into HP's laptops and other products. Considering the above-cited precedents, HP couldn't have satisfied its burden here by pointing to matters involving other camera technologies, much less matters that are unrelated except for the fact that they involve computers.

Nor do HP's additional allegations about the nature and extent of Mr. Allgood's involvement in those matters bring HP any closer to establishing a substantial relationship. As the comments to ABA Model Rule 1.9 state, "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation."[41] Yet HP repeatedly argues here that Mr. Allgood must be disqualified because of such general knowledge. For example, HP asserts that Mr. Allgood received or had access to: confidential information on "legal strategy, supplier relationships, internal procedures and decision-making in patent cases";[42] "knowledge about

---

[39] *E.g.*, *Duncan*, 646 F.2d at 1031.

[40] 2002 WL 32785219, at *3; *accord Moyroud v. Itek Corp.*, 528 F. Supp. 707, 708–09 (S.D. Fla. 1981) (finding that prior representation in patent case relating to photo typesetting didn't preclude appearing adverse to same client in later case involving different typesetting patents).

[41] Model Rules, R. 1.9 cmt. 3. The comment also notes that "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." As explained in the next section, HP has pointed to no such specific facts here.

[42] Dkt. #20 at 1; *see also id*. at 10 (arguing he was privy to information on "HP's relationship with component suppliers, procurement and supply chain matters, indemnification and defense

HP's business [and] organization";[43] and "knowledge about [the business unit] responsible for the [accused HP] computers."[44] HP further asserts that he had contact with two HP paralegals, four employees in the notebook engineering group, and three other employees in "marketing," "workstation engineering," and the "commercial notebook business."[45] These are exactly the kinds of allegations about general knowledge that the Fifth Circuit and this Court have consistently rejected as insufficient to show a substantial relationship.

For example, in *Secure Axcess*, Judge Davis rejected the following arguments when denying Dell's motion:

> [Dell's former attorneys] learned non-public information about the various business units at Dell, including information about Dell's engineering, sales, and marketing teams. They also gained knowledge about Dell's financial data, in particular how Dell stores sales information. Finally, they learned Dell's strategies for responding to allegations of patent infringement and its litigation strategies for handling actual claims of infringement.[46]

And in *Biax*, Judge Ward rejected similar arguments, even though the movant specified that its former counsel was privy to patent-litigation strategies for cases involving the same type of entity as the plaintiff. That is, Sun Microsystems argued that its attorneys had "developed a defensive and settlement strategy for infringement charges brought by" non-practicing entities, in addition to having gained "a detailed perspective into [Sun's] engineering departments" and

---

of HP by suppliers, intellectual property warranties and settlement considerations"); *id.* (arguing he "participated in HP's strategic and tactical decision-making process").

[43] *Id*.

[44] *Id*.

[45] *Id.* at 3–5, 10.

[46] 2012 WL 12919543, at *4; *see also id.* at *3 (rejecting argument based on "confidential strategies for defending patent infringement cases" when applying substantial-relationship test).

other information.[47] But under the circumstances, including the dissimilarity of the server-architecture technologies at issue, Judge Ward found those arguments unconvincing.[48]

Judge Ward's and Judge Davis's decisions both illustrate the principle, which the Fifth Circuit summarized in *Duncan*, that courts shouldn't accept "as evidence of a substantial relationship" statements that "could be applied to virtually any law firm that had ever represented [the movant]" in the same type of legal matter.[49] As those and other cases confirm, that's all HP's allegations amount to here.[50]

Moreover, although HP highlights the number of hours that Mr. Allgood purportedly worked on HP matters, HP cites no authorities suggesting that this could be dispositive. And once again, HP's showing here is weaker than in other cases where this Court and other courts have denied similar motions. In *E-Contact*, the two attorneys billed 2,684 hours.[51] In *Secure Access*, 2,600 hours.[52] In *Duncan*, a large firm handled 10 previous matters involving the same types of legal problems for Merrill Lynch, which almost certainly resulted in thousands of billable hours.[53] And in a similar Seventh Circuit case, the court denied disqualification where the

---

[47] 2007 WL 1466638, at *2–3; *see also* E.D. Tex. Case No. 2:06-cv-364, Dkt. #24 at 9–10 (*Biax* movant arguing that the "approach that Sun will take with respect to a small intellectual-property asset-management company will be similar from company to company").

[48] 2007 WL 1466638, at *3.

[49] 646 F.2d at 1029.

[50] *See also E-Contact*, E.D. Tex. Case No. 1:11-cv-426, Dkt. #404 at 12–13 (rejecting arguments relying on work "common to discovery in all patent infringement cases"); *Laker Airways*, 103 F.R.D. at 40 (finding, where matters related to same organization, its operation, and its activities, that such resemblances were too "general and superficial" to show a substantial relationship).

[51] E.D. Tex. Case No. 1:11-cv-426, Dkt. #404 at 3, 5.

[52] 2012 WL 12919543, at *4 (noting that the unsuccessful movant "highlight[ed] the amount of time" that the attorneys had worked on its matters).

[53] 646 F.2d at 1028–29.

attorneys billed 4,200 hours.[54]

Thus, all three factors that this Court considers—i.e., the legal issues, factual issues, and the extent of the representation—confirm that the previous matters HP relies on are not substantially related to this case. Additionally, the fact that Mr. Allgood was not the lead attorney in charge of any of the prior matters cuts against finding a substantial relationship.[55] As does the fact that all the matters that HP relies on concluded more than two years ago. As Circuit Judge Bryson noted while sitting in the Marshall Division of this Court, the receipt of outdated information is no basis to find a substantial relationship or otherwise disqualify counsel.[56]

**B.    HP Doesn't Attempt To and Can't Establish that Mr. Allgood Actually Possesses Any Relevant Confidential Information.**

As this Court has detailed, the substantial relationship test is one of "two ways in which a former client may bar an attorney from representing an adverse party."[57] The other is to prove "that the former attorney actually possesses relevant confidential information" that in reasonable probability will be used to the former client's disadvantage in the current litigation.[58] As noted, HP has opted to rely on the substantial relationship test.[59] When the test is satisfied, it allows a

---

[54] *Watkins v. TransUnion*, 869 F.3d 514 (7th Cir. 2017).

[55] *Cf. Cameron Iron Works, Inc. v. Hydril Co.*, 1980 WL 30294, at *4 (S.D. Tex. Jan. 9, 1980) (finding substantial relationship where movant "considered" attorney at issue "to be the attorney-in-charge from the beginning of the client relationship to the end").

[56] *Uropep*, 2016 WL 760909, at *7; *see also id.* at *4 ("Information acquired in a prior representation may have been rendered obsolete by the passage of time," which "may be relevant [to] whether two representations are substantially related.") (quoting Model Rules, R. 1.9 cmt. 3).

[57] *Simmons v. Houston Cty., Texas*, No. 9:05-cv-82, 2006 WL 8440543, at *3 (E.D. Tex. Feb. 2, 2006) (Giblin, J.).

[58] *Evolutionary Intelligence, Inc. v. Facebook, Inc.*, No. 6:12-cv-784, 2013 WL 12140485, at *2, *17 (E.D. Tex. July 3, 2013) (Craven, J.); *see also Uropep*, 2016 WL 760909, at *7–8 (rejecting this theory absent specific information that "would play a meaningful role in [the] case").

[59] Dkt. #20 at 8 ("[T]he only question is whether this case is 'substantially related' to the [prior] cases."); *accord id.* at 1 (arguing "[b]ecause this case is substantially related" there's "an

party to rely on a presumption rather than specifically identify the disadvantageous confidential information in an attorney's possession. As Judge Folsom explained in *Power Mosfet*:

> [T]he purpose behind barring counsel from representing a party now adverse to a former client in a substantially related matter is to prevent the use or disclosure of confidential information that might leave the former client at a disadvantage. This is why, if the movant shows that two matters are substantially related, an irrebuttable presumption arises that confidences were in fact shared with counsel.[60]

To the extent this Court nevertheless considers the confidential-information basis for disqualification, Mr. Allgood hasn't violated any ethical rules and doesn't possess any confidential information that could be the basis for disqualification. HP's submissions can't satisfy the heavy burden of showing otherwise. HP's allegations about general knowledge of its practices and procedures are insufficient for the same reasons set forth above.[61] And none of HP's more specific allegations about the confidential information that Mr. Allgood received would justify disqualification either. For instance, HP claims that Mr. Allgood learned about HP's relationship with two audio-technology suppliers and one display-port supplier. But HP doesn't assert that these companies provide HP with imaging lenses or anything else related to this case.

HP also claims that in this and other cases involving notebook and Chromebook computers, "how HP manages the suppliers is the same, how HP's internal teams handle information is the same, how HP manages the supply chain is the same, how HP manages financial records is the same, and HP's marketing and sales are the same."[62] But to the extent these statements

---

irrebuttable presumption" Largan's attorneys "will use HP's confidential information to its detriment"); *id*. at 10 (concluding HP "met its burden to show that this case is substantially related").

[60] 2002 WL 32785219, at *2; *see also Simmons*, 2006 WL 8440543, at *5 (rejecting confidential-information theory where former client didn't "specifically identify what he disclosed").

[61] In many of the above-cited cases, the movant expressly relied on both ways of disqualifying attorneys and the Court found the movant's arguments insufficient under both. *E.g.*, *Secure Access*, *Biax*, *Power Mosfet*, *Uropep*, and *E-Contact*, *supra*.

[62] Dkt. #20 at 9.

extend beyond the kinds of generalities that are insufficient to establish HP's entitlement to disqualification under any legal theory, they're both unsupported and implausible. Mr. Baca's declaration doesn't assert that HP's agreements and relationships with its imaging-lens suppliers are the same as with its audio-software suppliers.[63] Nor is there any other reason to believe that such a large manufacturer of end products as HP, with such a lengthy supply chain, has the same agreements and relationships with all of its many suppliers.

Beyond that, information relating to HP's relationships with the suppliers in this case is subject to discovery, as is other information relating to, e.g., HP's policies, practices, engineering, and sales. Such discoverable information is no basis for disqualification, per the relevant case law. For instance, in *Abney v. Walmart*, Judge Schell noted that confidential information relating to a movant's health was discoverable in a subsequent personal injury action, and so was no reason to disqualify his attorney when he failed to show otherwise.[64] Here, HP doesn't explain why any of the information that it cites, general or specific, wouldn't be discoverable. For that and all the other reasons set forth above, HP isn't entitled to disqualification based on any actual possession of confidential information.

### C.     Although the Court Needn't Reach this Issue, Disqualifying Mr. Allgood Shouldn't Automatically Disqualify Fisch Sigler.

Under Texas Disciplinary Rule 1.09(b), the personal conflicts of one attorney are imputed to all other members of a firm. But federal courts ruling on disqualification motions haven't mechanically applied this rule. In *DataTreasury v. Wells Fargo*, for instance, Judge Folsom

---

[63] *See* Dkt. #20-1.

[64] *Abney*, 984 F. Supp. at 530; *see also Uropep*, 2016 WL 760909, at *8 (denying motion to disqualify where movant relied on "readily discoverable" information); *Tradewinds Airlines, Inc. v. Soros*, 2009 WL 1321695, at *8 (S.D.N.Y. May 12, 2009) (noting only "non-discoverable information" would give an attorney "an unfair advantage" against a former client).

concluded that the former matters were substantially related, but disqualification nevertheless wasn't warranted after balancing other relevant factors including cost and "each party's right to choose its own counsel."[65] And when the movant petitioned for mandamus relief, the Federal Circuit didn't find any clear error in that decision.[66]

Here, there's no basis to disqualify Mr. Allgood. But if there were, it shouldn't result in the automatic disqualification of Largan's chosen firm, as well. Although Mr. Allgood has worked on this case, it's still in its infancy, with no party having answered the complaint at the time HP filed its motion. So even if there were a conflict requiring his disqualification, Largan respectfully submits that screening him from further participation would be sufficient.[67]

## V.     CONCLUSION

One of the fundamental tenets of American jurisprudence is that a party has the right to choose its own counsel. Abrogation of that right is a "severe remedy" imposed only if the movant meets a "heavy" burden. HP hasn't carried the heavy burden necessary to deprive Largan of its right to use Fisch Sigler as counsel in this case. Indeed, this case involves different technologies and patents, different products, different infringing subcomponents, different plaintiffs, and different suppliers from the prior matters HP identifies in its motion. Accordingly, HP's motion should be denied, and Largan should be permitted to proceed with its chosen counsel.

---

[65] No. 2:06-cv-72, 2009 WL 10679840, at *9–11 (E.D. Tex. Dec. 30, 2009).

[66] *In re DataTreasury Corp.*, 2010 WL 3074395, at *2 (Fed. Cir. Aug. 5, 2010).

[67] *See generally DataTreasury*, 2009 WL 10679840, at *9; *Adaptix*, 2014 WL 11730482, at *8 ("[E]ven if the Court were to assume the two matters are substantially related, the Court would find [the] screening protocol and other issues sufficient to cure any conflict.").

Dated: December 20, 2019

Respectfully submitted,

*/s/ Alan M. Fisch*

Alan M. Fisch
Lead Attorney
D.C. Bar No. 453068
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
D.C. Bar No. 490957
*bill.sigler@fischllp.com*
Adam A. Allgood
Texas Bar No. 24059403
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
+1.202.362.3500

Ken K. Fung
California Bar No. 283854
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
+1.650.362.8200

*Attorneys for Plaintiff*
*Largan Precision Co., Ltd.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2019, I caused the foregoing document to be served

via the Court's CM/ECF system on all counsel of record per Local Rule CV-5(a)(3).

<u>*/s/ Alan M. Fisch*</u>
Alan M. Fisch