# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| LARGAN PRECISION CO., LTD., § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> ABILITY OPTO-ELECTRONICS § <br> TECHNOLOGY CO., LTD.; NEWMAX § <br> TECHNOLOGY CO., LTD.; AND HP § <br> INC. § <br> § <br> *Defendants*. § | Civil Action No. 4:19-cv-696 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Ability Opto-Electronics Technology Co., Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. #30) and Defendant Newmax Technology Co., Ltd.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #39).

After consideration, the Court finds that both motions (Dkts. #30; #39) should be **DENIED**.

## BACKGROUND

### I. Factual Summary

Plaintiff Largan Precision Co., Ltd. ("Largan") is a Taiwanese corporation in the business of supplying high-performance imaging lenses for consumer electronic products. Largan's lenses are incorporated in a variety of products, including notebook computers, laptop computers, tablets, webcams, scanners, and Apple iPhones. Largan currently holds 668 United States patents, including the four patents-in-suit here: U.S. Patent Nos. 7,274,518 ("the '518 Patent"); 8,395,691 ("the '691 Patent"); 8,988,796 ("the '796 Patent"); and 9,146,378 ("the '378 Patent"). In this case, Largan asserts the patents-in-suit against Defendants Ability Opto-Electronics Technology Co., Ltd.

("AOET"), Newmax Technology Co., Ltd. ("Newmax"), and HP Inc. ("HP") (collectively, "Defendants").

AOET is a Taiwanese corporation with its principal place of business in Taichung City, Taiwan. AOET is in the business of designing, manufacturing, and selling optical lenses. AOET also designs, manufactures, and sells lens assemblies that comprise multiple lenses. AOET's facilities are all located in Asia—specifically, Taiwan, Vietnam, and China. Newmax, a Taiwanese corporation with its principal place of business in Taichung City, Taiwan, is in a similar line of business. And HP is a Delaware corporation with its principal place of business in Palo Alto, California.

The supply chain for the optical lens is fairly complicated but operates something like this. First, a company like AOET or Newmax designs and manufactures the lens from raw materials. Sometimes it is a single lens; other times it is a lens assembly that comprises multiple lenses. Once designed and manufactured, the lens or lens assembly is sold and shipped to third-party module integrators. These third-party module integrators use the lenses or lens assemblies to manufacture and assemble complete camera systems or other complex module components and sell and ship those systems and components to system integrators. The system integrators then integrate the camera system, as a component, into a computer or some other kind of consumer electronics product. That completed product is then sold by the system integrator to an original equipment manufacturer ("OEM"), such as HP, who then turns around and sells the computer or product under its own brand name to an end customer.

According to Largan's complaint and the affidavit of Chia-Wen Lee, the Head of Largan's Legal Division, Largan conducted investigations into certain consumer electronic products sold by HP in the United States and discovered that AOET and Newmax lens systems were incorporated into

2

those products. It uncovered this by purchasing certain HP products sold in Texas and using a CT scanner to generate cross-sectional images of the allegedly infringing products. After examining the resulting images, Largan learned that AOET's and Newmax's allegedly infringing lenses were incorporated into certain HP products sold at various retail establishments in the United States, including in Texas. HP allegedly sells infringing products through its website, HP.com, and through major retailers, including Best Buy, Amazon.com, Walmart, and Newegg.

It is undisputed that AOET and Newmax lenses have been incorporated into certain HP products that have been sold at various retail establishments in Texas. It is also undisputed that AOET is the sole supplier of lenses for some of those products and that Newmax is the sole supplier for others. AOET and Newmax are also one of two suppliers for certain other HP products. A chart reflecting which HP products AOET and Newmax supply lenses for is reproduced below.[1]

| HP models | Product ID | Webcam lens suppliers |
|---|---|---|
| HP Spectre Folio | 3SD73AV_1 | AOET |
| | 4TL67UA#ABA | AOET |
| | 5GQ93UA#ABA | AOET |
| HP Pavilion x360 Convertible 14 | 4NC87UA#ABA | AOET |
| HP x360 Convertible 14M | 3DR45AV_1 | Glorytek |
| | 4NC87UA#ABA | AOET |
| HP x360 Convertible 14T | 3DR45AV_1 | AOET |
| | 4SX04AV_1 | AOET |
| HP Envy x360 15T | 5JR84AV_1 | AOET |
| | 5JR82AV_1 | AOET |
| | 5QN41AV_1 | Powertip /AOET |
| | 3EC87AV_1 | AOET |
| | 5HK14AV_1 | Glorytek /AOET |
| HP Envy x360 15Z | 3EC81AV_1 | AOET |
| | 5QN27AV_1 | Powertip /AOET |
| HP Envy x360 Convertible 15 | 4HH56UA#ABA | AOET |
| | 5JR84AV_1 | AOET |
| | 4HH53UA#ABA | AOET |
| | 1KS77UA#ABA | AOET |

---

[1] (Dkt. #50-1, ¶ 3).

| Model | Part Number | Supplier |
|---|---|---|
| HP Envy x360 Convertible 15M | 1ZA23AV_1 | AOET |
| | 4QF77AV_1 | AOET |
| HP Envy 15 | 1UZ37EA | AOET |
| HP Omen X 17 | 2LV61UA#ABA | AOET |
| HP Omen 17 | 3AW55AV_1 | AOET |
| | 5UK34AV_1 | AOET |
| | 4NA35UA#ABA | AOET |
| | 4FJ26AV_1 | AOET |
| HP Omen X 17T | 1PN85AV | AOET |
| HP EliteBook 1050G1 | 4NC54UT#ABA | Newmax |
| | 3TN94AV_MB | AOET |
| | 4NC55UT#ABA | AOET |
| | 4NL54UT#ABA | AOET |
| HP Zbook Studio x360 G5 | 4NL02UT#ABA | Newmax |
| | 2YS50AV_MB | AOET |
| | 4NL13UT#ABA | AOET |
| | 4NL44UT#ABA | AOET |
| HP Zbook Studio G5 | 4NH77UT#ABA | AOET |
| | 2YN59AV_MB | AOET |
| | 4NH78UT#ABA | AOET |
| | 4NM08UT#ABA | AOET |
| HP Elitebook 745 G5 | 4JB96UT#ABA | AOET |
| | 2MG22AV_MB | AOET |
| | 4JB83UT#ABA | AOET |
| | 4JB90UT#ABA | AOET |
| HP Elitebook 755 G5 | 4HZ47UT#ABA | AOET |
| | 2MN14AV_MB | AOET |
| | 4HZ48UT#ABA | AOET |
| | 4HZ53UT#ABA | AOET |
| HP Pavilion x360 | 3DZ22AV_1 | AOET |
| | 5TM97AV_1 | Glorytek /AOET |
| | 5RD26AV_1 | Powertip /AOET |
| HP Elite x2 | 5RB71UT#ABA | AOET |
| | 2KN62AV_MB | AOET |
| | 4RG84UT#ABA | AOET |
| HP EliteBook 840r G4 | 2LG02AV_MB | Newmax /AOET |

The dispute at issue here concerns AOET's and Newmax's participation in the sale of HP's allegedly infringing products in Texas and whether AOET and Newmax are consequently subject to suit here. AOET and Newmax claim, with supporting affidavits, that they have not purposefully directed any activities at the United States or Texas and that they do not direct or control any of the activities involved with the sale of HP's products in Texas. Largan disputes this, with a supporting affidavit of its own, claiming that both AOET and Newmax intentionally place their lenses and lens assemblies in an international distribution chain knowing or on notice of the fact that those products will be made available for sale in the United States and in Texas.

## II. Procedural History

On December 20, 2019, AOET filed a motion to dismiss (Dkt. #30). On January 6, 2020, Newmax filed a motion to dismiss (Dkt. #39). On January 21, 2020, Largan filed a consolidated response to both motions (Dkt. #50).

## LEGAL STANDARD

### I. 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if the court holds an evidentiary hearing on the question of personal jurisdiction, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese-*

*Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established certain minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston v. Multidata Sys. Int'l Corp.*,

523 F.3d 602, 610 (5th Cir. 2008) (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992)). However, only in an "exceptional case" could a plaintiff assert general jurisdiction over a party in a forum outside of its domicile, place of incorporation, or principal place of business. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016) (citations and quotation omitted). Finding general jurisdiction where an individual or company is outside of its domicile, place of incorporation, or principal place of business requires a showing of a defendant's substantial, continuous, and systematic contact with the forum. *See Johnston*, 523 F.3d at 609. And "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* at 610 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[T]he court must separately consider specific jurisdiction for each claim that arises from different forum contacts." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 198 n.16 (5th Cir. 2019) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for

consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*. Rather, the specific-jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation and quotations omitted). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919). Further, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* (alteration in original) (quoting *Walden*, 571 U.S. at 286).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King Corp.*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

**II.     12(b)(3)**

Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in any judicial district where the defendant resides, or where the defendant has committed acts of

infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). When a foreign corporation is sued for patent infringement, however, it is subject to suit in any judicial district. *Luminati Networks Ltd. v. BIScience Inc*, No. 2:18-cv-483, 2019 WL 2084426, at *7 (E.D. Tex. May 13, 2019) (citing 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018)); *see also Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. W-19-cv-00257-ADA, 2019 WL 7598931, at *3 (W.D. Tex. Oct. 22, 2019).

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Upon appropriate motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue. *In re ZTE (USA), Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

## ANALYSIS

AOET and Newmax ask the Court to dismiss this case for lack of personal jurisdiction. In addition, AOET also asks for dismissal based on improper venue. The Court address each argument in turn.

**I.     12(b)(2)**

First, AOET and Newmax both argue that the Court lacks general jurisdiction because they lack substantial, continuous, and systematic contacts with the state of Texas that would render them essentially at home here. Second, AOET and Newmax argue that the Court lacks specific jurisdiction. Their positions are essentially the same, albeit stated in separate motions: that neither has purposefully directed any activities at Texas merely by placing products into the stream of commerce that ultimately caused an alleged injury in Texas. Accordingly, AOET and Newmax argue, there is no relationship between them, the forum, and the litigation that would create the requisite contacts for the Court to exercise personal jurisdiction.

Largan's position is that personal jurisdiction is proper under a stream of commerce theory. Specifically, it argues that AOET and Newmax sell their products into HP's supply chain, knowing that the United States, including Texas, is the likely destination of their products.

*A. General Jurisdiction*

In the first place, the Court agrees with AOET and Newmax that there is no general jurisdiction over either here. Largan does not even attempt to argue otherwise, nor could it. AOET and Newmax are incorporated outside of Texas, and neither has its principal place of business in Texas. *See Daimler AG*, 571 U.S. at 137 (citing *Goodyear*, 564 U.S. at 924) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (internal quotations omitted). And neither are AOET's or Newmax's Texas contacts so continuous and systematic so as to render them essentially at home here. *Id.* at 138–39. Accordingly, the Court does not have general jurisdiction over AOET and Newmax.

*B. Specific Jurisdiction—Stream of Commerce*

As for specific jurisdiction, the Supreme Court has held generally that the stream of commerce theory provides a valid basis for establishing minimum contacts. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98 (1980). Indeed, "[t]he forum does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Id*. In *Asahi Metal Industry Co. v. Superior Court*, however, the Supreme Court split as to the precise application of the stream of commerce theory. *ATEN Intern. Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 119 (E.D. Tex. 2009) (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112, 117 (1987)).

Justice Brennan, in his concurrence in *Asahi*, wrote that "[m]ere placement in the stream of commerce is sufficient" for specific jurisdiction. *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-cv-26, 2009 WL 1025467, at *8 (E.D. Tex March 26, 2009) (citing *Asahi*, 480 U.S. at 112). For Justice Brennan, the "stream of commerce refers . . . to the regular and anticipated flow of products from manufacture to distribution to retail sale," and due process is not offended "as long as a [defendant] . . . is aware that the final product is being marketed in the forum state." *Asahi*, 480 U.S. at 116–17. Justice O'Connor, writing for a plurality of the Court, would have required more. In particular, Justice O'Connor reasoned that "[t]he placement of a product into the stream of commerce, *without more*, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

The Federal Circuit, whose personal jurisdiction jurisprudence binds this Court in patent-related cases, has upheld the exercise of personal jurisdiction premised on a stream of commerce

theory. *Beverly Hills Fan Co. v. Royal Sovereign Corp. See* 21 F.3d 1558, 1566 (Fed. Cir. 1994); *see also Luminati*, 2019 WL 2084426, at *3 (citing *Celegard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015)) ("Federal Circuit law governs personal jurisdiction where a patent question exists.") (internal quotations omitted). In *Beverly Hills Fan*, the Federal Circuit applied the stream of commerce theory and held that all the requisites for specific jurisdiction were present: "defendants, acting in consort, placed the accused [products] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566. Importantly, however, the Federal Circuit's opinion did not formally adopt either view from *Asahi*, holding instead that "under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing." *Id.*; *see also Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1321 (Fed. Cir. 2005).[2]

Against this legal backdrop, the Court turns to the facts in this case. Largan's complaint alleges that AOET and Newmax produce, manufacture, and design optical lenses and lens assemblies that infringe the patents-in-suit. Their lenses, Largan pleads, are incorporated "into at least 15 HP products sold in the United States, including the HP Spectre Folio, and 14 models of HP Pavilion, Envy, Omen, EliteBook, and ZBook computers." (Dkt. #1). Largan claims that the infringing products are offered for sale in Texas vis-à-vis AOET's and/or Newmax's "subsidiaries or

---

[2] One of the Supreme Court's last meaningful explorations of the stream of commerce theory came in its 2011 decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). There too, however, the Court was split. Justice Kennedy, writing for a plurality, rejected Justice Brennan's approach in *Asahi* and sided generally with Justice O'Connor. *Nicastro*, 564 U.S. at 882–84. Justice Kennedy would have upheld the exercise of specific jurisdiction "only where the defendant can be said to have *targeted* the forum." *Id.* at 882 (emphasis added) ("Justice Brennan's concurrence, advocating a rule based on general notions of fairness and foreseeability, is inconsistent with the premises of lawful judicial power. This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."). Because the Court was split, however, the *Nicastro* decision did not definitively resolve the *Asahi* split.

intermediaries (including distributors, resellers, and others)," authorizing the exercise of personal jurisdiction over both corporations.

Regarding AOET, it denies having sold or offered to sell lenses or lens assemblies in Texas. (Dkt. #30, pg. 11–12). For support, AOET provides the affidavit of its Vice President of Sales, Nicole Hsiao. In her affidavit, Ms. Hsiao testifies that AOET does not have any offices, facilities, subsidiaries, employees, assets, inventory, or bank accounts in the State of Texas; does not conduct or solicit business from, or direct relevant business efforts to, the State of Texas; and does not advertise or market its products in Texas. (Dkt. #30-2, ¶¶ 6–7).

She also explains that "AOET is only one part of a multi-part manufacturing and supply chain that takes place outside of the United States." *Id.* at ¶ 9. AOET, she states, is only the first link in this long chain; it manufactures and designs the lenses at its facilities in China or Vietnam and then ships them to the module integrators, who are located in China. *Id.* AOET apparently does not know or control which of its lenses are used as components in which modules; which modules are shipped to which system integrators; or the terms and conditions of any downstream transactions in the supply chain. *Id.* at ¶¶ 10–12. Ultimately, Ms. Hsiao claims, any transactions that take place downstream of AOET's participation in the process are completely out of AOET's control—including, importantly, any marketing and sales of the finished product by HP in the United States and in Texas. *Id.* at ¶ 12 ("Similarly, to the extent that further steps exist in this chain where a distributor, reseller, or other retailer markets or sells the computer, AOET does not know, is not aware of, and does not control whether any distributor, reseller, or retailer sells or markets any computers in the State of Texas (or, more broadly, in the United States) . . . or whether these computers have AOET lenses.").

In response to the testimony contained in the Hsiao affidavit, Largan provides the affidavit of Chia-Wen Lee, the Head of its Legal Division (Dkt. #50-1, ¶ 3). Lee claims that the Hsiao affidavit

inaccurately portrays the imaging-lens industry and the supply chain connecting AOET to HP and its sales in the United States and Texas. *Id.* at ¶ 5. Specifically, Lee states that end-product manufacturers, like HP, frequently are involved in the decision-making process regarding "which lenses [are] manufacture[d], the specifications of those lenses, how many to manufacture, who to sell them to, and for how much." *Id.* at ¶¶ 34–35. The process, according to Lee, typically involves negotiations and cooperation between the various entities on the supply chain. That is, contrary to the statements in the Hsiao affidavit suggesting that each entity on the supply chain is isolated from the others, the Lee affidavit indicates that the process is much more fluid and involves end-to-end collaboration.

Additionally, the Lee affidavit also contradicts AOET's claims that it has no knowledge or awareness of whether its products are sold in the United States or Texas. First, Lee points to AOET's own statements in its annual reports from 2015–2018, in which AOET apparently states that the United States is "the main market" for its products. Second, Lee observes that AOET indicates in its annual reports that it applies for and receives patent protection in the United States to enhance the value of its products.

After consideration of the motions, arguments, and supporting affidavits, the Court finds that Largan has made a prima facie showing for personal jurisdiction. *See ATEN*, 261 F.R.D. at 118 (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)) ("If the parties have not conducted jurisdictional discovery, a plaintiff only needs to make a prima facie showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff."). Not only does AOET place its products in the stream of commerce that begins in Asia and ends in the United States and in Texas, it intends and desires for its products to be sold in the United States. It is undisputed that finished products incorporating

AOET's lenses frequently are made available for sale in multiple retail locations in Texas. Moreover, AOET appears to have, at the very least, the *intent* that its products be sold in the United States and Texas, even if it does not know or control all of the precise details of those downstream transactions. According to Lee's affidavit, AOET targets the United States market as its "main market" and applies for and receives patent protection there, indicating that it, at the very least, expects that its products will be sold there. And as far as its sales in Texas, while AOET may not have direct and complete control over where the final products containing its lenses end up being sold, the Court has no problem concluding that AOET could have expected that those products would be sold in Texas. "Within the United States, the State of Texas has the second largest population of any state and three of the ten most populated cities. In light of resolving the controverted factual allegations in favor of [Largan], it is only reasonable to assume that [AOET] knew, or reasonably could have foreseen, that [products incorporating its lenses] would be sold in the State of Texas. *See GSK Technolgies, Inc. v. Schneider Elec., S.A.*, No. 6:06-cv-361, 2007 WL 788343, at *2 (E.D. Tex. Mar. 14, 2007) (citing *Beverly Hills Fan*, 21 F.3d at 1564).

Moreover, the present case is on all fours with other cases from this district finding personal jurisdiction on a stream of commerce theory. As one example, consider *ATEN International v. Emine Technology*. There, Emine, a Taiwanese supplier, was sued for patent infringement and argued that the court did not have personal jurisdiction because it did not "purposefully place[] its products into the stream of commerce" or have "specific intent to direct its products to Texas." *ATEN*, 261 F.R.D. at 119. Emine presented evidence that it delivered its products to a Taiwanese shipping company, who was then responsible for shipping those products to end consumers in the United States, and represented that it had no knowledge of the final destination of any of its products. *Id.* But the court was unpersuaded. The evidence showed that Emine sold its products to a United States retailer and

that its products were consistently made available for sale in Texas, leading the court to conclude that Emine either "knew or should have known that its products were being marketed and sold in Texas." *Id.* at 120 ("Thus, in light of resolving the controverted factual issues in favor of the party seeking jurisdiction, ATEN has made a prima facie showing that Emine placed its products into the stream of commerce with knowledge and an intention that they be sold in Texas.").

In another case from this district, a Chinese manufacturer of drill chucks was sued for patent infringement. *Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, No. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005). The evidence showed that the defendant manufactured the drill chucks and then sold them to a Hong Kong company, who designed and manufactured the drills incorporating those chucks and then sold the drills to a major United States retail chain. *Id.* at *1. The plaintiff argued that jurisdiction was proper over the defendant on the ground that it knowingly delivered its drill chucks into the supply chain for certain brand name drills sold in the United States and Texas. *Id.* at *4. The defendant argued that jurisdiction was improper because it "does not sell products in the State of Texas. . . . has no employees . . . or offices [there] . . . [and] does not have established product distribution channels in Texas." *Id.* In other words, the crux of defendant's argument was that, "to the extent chucks manufactured by [defendant] found their way into Texas, it was not the result of any activity of [defendant] purposefully directed at Texas." *Id.* The court was unpersuaded. Based on the fact that the defendant knowingly contracted to sell its chucks to the Hong Kong drill manufacturer, who had the exclusive right to sell defendant's chucks in the United States, the Court concluded that "it is reasonably inferable that [defendant] knew and expected its chucks would be used as components in [the drills sold in] The Home Depot stores in the United States, including Texas. *Id.*

16

In the present case, the Court is persuaded that, under either formulation from *Asahi*, Largan made the required jurisdictional showing. As in *ATEN* and *Jacobs*, the evidence here showed that AOET intentionally placed its lenses and lens assemblies in a distribution chain flowing from Asia to the United States and Texas; that AOET sought out the United States market, evidenced by the fact that it considered the United States it its "main market" and by seeking and receiving patent protection there; that AOET had a commercial relationship with HP; and that they accessed the Texas consumer-electronics market vis-à-vis that relationship. Based on this, the Court is satisfied that AOET sufficiently directed activities at the United States and Texas and knew or could reasonably expect that products incorporating its lenses would be sold in both places. AOET delivered products into the stream of commerce that were destined for retail in the United States and Texas, and the lengthy and complex distribution chain that got the products from Asia to Texas does not insulate AOET from suit in Texas.

With respect to Newmax, it occupies virtually the same spot on the supply chain as does AOET. In its motion and through the affidavit of Ching-Kuan Lin, Newmax's Associate Vice President, Newmax makes substantially the same arguments as AOET for why the Court lacks specific jurisdiction in this case. (Dkt. #39-1, ¶ 3) ("Once Newmax sells and supplies the lens components to its customer Camera-Module Makers in Asia, it has no further involvement, direction or control over these customers who then sell the camera modules to End-Product Integrators for incorporation of the camera modules into end products, for example, computers or cellular phones."). As the Court has already explained in the foregoing analysis, that Newmax does not have control over the specific details of transactions that occur downstream in the distribution channel does nothing to diminish the fact that it intentionally places its lenses in a supply chain that ends with sales of finished products containing its lenses in Texas and elsewhere in the United States. The reality is, like AOET,

Newmax either knows or reasonably should know that its products are being sold by a major United States retailer in numerous locations throughout the country's second largest state. Based on the evidence that Newmax has intentionally placed its products into an international distribution network and evidence that its products are made available for sale in Texas, the Court is comfortable concluding that Largan has made a prima facie showing that Newmax has purposefully entered the Texas stream of commerce. Accordingly, personal jurisdiction over Newmax is proper here.

*C. Whether the Exercise of Jurisdiction is Fair and Reasonable*

And finally, both AOET and Newmax argue that the exercise of personal jurisdiction here, even if otherwise proper based on a stream of commerce theory, would nevertheless be unreasonable and "offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co.*, 326 U.S. at 316. The Court disagrees. To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *See Asahi*, 480 U.S. at 113. A consideration of these factors in this case clearly reveals the reasonableness of this Court's assertion of jurisdiction over both AOET and Newmax.

Where, as here, minimum contacts are established, a nonresident defendant must make a "compelling case" against the exercise of personal jurisdiction. *See Wien Air Alaska*, 195 F.3d at 215 (citing *Burger King*, 471 U.S. at 477). The gravamen of AOET's argument is that it would "bear a significant burden in time, expense, and inconvenience if forced to litigate against Largan in Texas, more than 7,500 miles away from either company's home." (Dkt. #30). But courts in this district

have considered and rejected similar distance-related objections to the reasonableness of personal jurisdiction. For example, in *Jacobs*, the Court explained:

> Since 1957, dramatic advances in transportation and communication technology have only further lessened the burden on foreign defendants, such as daily international commercial flights, express delivery services, fax machines, the Internet, teleconferencing, and videoconferencing. The same technology that facilitates Weida conducting business with customers in eighty countries equally facilitates its ability to defend itself from claims of patent infringement in countries where its products arrive.

*Jacobs*, 2005 WL 3299718, at *9. Absent some further showing by AOET, the Court does not see how, given that AOET should have reasonably foreseen being subjected to suit in the United States, exercising jurisdiction would be manifestly unreasonable and unfair.

AOET also argues that this claim should really be litigated in Taiwan because "[the] inventors reside in Taiwan . . . prior trade secrets dispute[s] between Largan and AOET . . . took place in Taiwan under Taiwanese law. . . . [And] both companies are incorporated and headquartered [there]." Accordingly, AOET argues, the State of Texas lacks sufficient interest in adjudicating this dispute. The Court is equally unpersuaded by this argument. "The State of Texas has a strong interest in preventing patent infringement within its borders." *ATEN*, 261 F.R.D. at 120 (citing *Beverly Hills Fan*, 21 F.3d at 1568). Moreover, Texas has an interest in advancing scientific progress and development, which patent laws promote. *Id.* Therefore, Texas has a sufficient interest in this litigation.

Similarly, Largan has an interest in obtaining relief in Texas. Indeed, the alleged patent infringement occurred, and is potentially still occurring, in Texas. Largan thus has a significant interest in recovering the damages sustained from sales of any infringing products in Texas.

Finally, the parties do not dispute the final two reasonableness factors, so the Court will not analyze them. It is sufficient simply to say that, on the whole, "this is not one of the rare cases where

exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. . . . Texas's interests are not so attenuated that they are clearly outweighed by any burden [AOET] would suffer by having to defend this case in Texas, rather than [elsewhere]." *ATEN*, 261 F.R.D. at 120.

II.     12(b)(3)

AOET also moves to dismiss for improper venue. As stated earlier in this Order, when a foreign corporation is sued for patent infringement, it is subject to suit in any judicial district. *Luminati Networks Ltd. v. BIScience Inc*, No. 2:18-cv-483, 2019 WL 2084426, at *7 (E.D. Tex. May 13, 2019) (citing 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018)). Therefore, venue is proper in the Eastern District of Texas.

## CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** that Ability Opto-Electronics Technology Co., Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. #30) and Defendant Newmax Technology Co., Ltd.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #39) are **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 5th day of February, 2020.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE