**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |
|---|---|
| **LARGAN PRECISION CO., LTD.,**<br><br>　　　　　**Plaintiff,**<br><br>**v.**<br><br>**ABILITY OPTO-ELECTRONICS<br>TECHNOLOGY CO., LTD.;<br>NEWMAX TECHNOLOGY CO., LTD.; AND<br>HP INC.**<br><br>　　　　　**Defendants.** | **Case No. 4:19-cv-00696-ALM** |

**DEFENDANT HP INC.'S MOTION TO TRANSFER
<u>TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.   HP's Connections to California and Lack of Connections to this District ...................... 2

    B.   Largan's Connections to California and Lack of Connections to this District ................ 4

    C.   Third-Party Witnesses Located in California ................................................. 4

III.  LEGAL STANDARD ......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 7

    A.   Venue is Proper in the Northern District of California. ................................. 7

    B.   The Private Interest Factors Weigh Heavily in Favor of Transfer to the Northern District of California. ................................................................ 8

        1.   The Sources of Proof are More Easily Accessed in The Northern District of California. ................................................................... 8

        2.   The Northern District of California is More Convenient and Has Subpoena Power Over Necessary Non-Party Witnesses. ........................................ 10

        3.   The Northern District of California is Far More Convenient for Potential Party Witnesses. ......................................................................... 11

        4.   No Practical Problems Exist with Transferring This Action to The Northern District of California. ....................................................................... 12

    C.   The Public Interest Factors Strongly Favor Transfer to the Northern District of California or are Neutral. ................................................................. 12

        1.   Judicial Economy Favors Transfer. ........................................................ 13

        2.   The Northern District of California Has a Significant Interest in This Action, Whereas Texas Has None. ........................................................ 13

        3.   No Administrative Difficulties Flowing From Court Congestion Exist. ................. 15

V.    CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013) ....................................................................... 9

*Arctic Cat Inc. v. Bombardier Recreation Products Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)................................................................................... 5

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   No. 2019-1080, 2020 WL 808173 (Fed. Cir. Feb. 19, 2020)..................................... 5

*Bandspeed, Inc. v. Acer, Inc.*,
   No. 2:10-CV-215-TJW, 2011 WL 3648453 (E.D. Tex. Aug. 15, 2011) ................... 7

*Blue Spike, LLC v. Juniper Networks, Inc.*,
   No. 6:17-CV-16-KNM, 2018 WL 4222994 (E.D. Tex. Mar. 8, 2018) ..................... 11

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) ........................................................................Passim

*In re Google Inc.*,
   No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017).................................. 7, 11

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ................................................................................ 6

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011) ................................................................................ 6

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ............................................................................ 6, 7

*In re Toyota Motor Corp.*,
   747 F.3d 1228 (Fed. Cir. 2014) ................................................................................ 7

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) .......................................................................... 7, 14

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004)............................................................................... 6, 14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008)............................................................................Passim

*Largan Precision Co., Ltd. v. Genius Electronic Optical Co., Ltd.*,
    646 Fed. Appx. 946 (Fed. Cir. 2016) ........................................................ 4

*Largan Precision Co, Ltd. v. Genius Electronic Optical Co.*,
    No. 13-CV-02502-JD, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014) ................................. 13, 14

*Largan Precision Co, Ltd v. Genius Electronic Optical Co.*,
    86 F. Supp. 3d 1105 (N.D. Cal. 2015) ....................................................... 5, 13, 14

*Largan Precision Co, Ltd v. Genius Electronic Optical Co.*,
    No. 13-CV-02502-JD, 2014 WL 5358426 (N.D. Cal. Oct. 20, 2014) ................................. 13, 14

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*,
    No. 6:11-cv-53 LED-JDL, 2012 WL 12836668 (E.D. Tex. Feb. 10, 2012) ............................ 11

*Regents of the Univ. of Cal. v. Eli Lilly Co.*,
    119 F.3d 1559 (Fed. Cir. 1997) .............................................................. 7

*Software Rights Archive, LLC, v. Google*, Inc.,
    No. 2:07-cv-511-CE, 2010 WL 2950351 (E. D. Tex. July 22, 2010) ................................ 8

*TransUnion Intelligence LLC v. Search Am., Inc.*,
    No. 2:10-CV-130-TJW, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ................................. 12

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    No. 2:10-cv-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ................................ 8

**Statutes**

28 U.S.C. § 1400(b) ........................................................................ 8

28 U.S.C. § 1404(a) ................................................................... Passim

35 U.S.C. § 287 ........................................................................... 5

Pursuant to 28 U.S.C. § 1404(a), Defendant HP Inc. ("HP") respectfully moves for an order transferring this action to the United States District Court for the Northern District of California.[1] ("Northern District")

## I.      **INTRODUCTION**

The convenience of the parties and witnesses, the interests of justice, and judicial efficiency all strongly favor transferring this case to the Northern District.  The Federal Circuit and this Court have long recognized that there are several factors that must be considered in a transfer analysis – with the most important being the location of evidence and the convenience to witnesses.  Here, HP's headquarters and principal place of business are in Palo Alto, California, in the Northern District.  At least ten HP witnesses, two non-party witnesses, and HP's relevant documents are located in the Northern District.  By contrast, Plaintiff Largan Precision Co., Ltd. ("Largan") is a Taiwanese company with no connection to the Eastern District of Texas ("Eastern District").

In fact, the only state in the United States to which Largan has a connection is *California*.  Largan filed one patent infringement lawsuit in the Southern District of California and two patent infringement lawsuits in the Northern District, one of which was against Genius Electronic Optical Co. Ltd. ("Genius").  *See e.g., Largan Precision Co. Ltd. v. Samsung Elecs. Co. Ltd.,* No. 3-13cv-02740 (S.D. Cal);  *Largan Precision Co., Ltd. v. Genius Electronic Optical Co., Ltd.,* No. 3:13-cv-02502 (N.D. Cal); *Largan Precision Co. Ltd. v. Fujinon Corp.,* No. 4:10-cv-01318 (N.D. Cal).[2]

The asserted patents in the Genius case are very similar patents as the case at bar, including one of the same patents that is asserted against HP in this case.  All in all, the Northern District

---

[1] Without waiving their defenses that claim that this Court does not have personal jurisdiction over them, Ability Opto-Electronics Technology Co. Ltd. ("Ability") and Newmax Technology Co. Ltd. ("Newmax") both consent to transferring this case to the Northern District of California and plan to join HP's motion to transfer.  Further, although they consent to transfer, Ability and Newmax assert that there is no personal jurisdiction over them in the Northern District of California either, and they reserve the right to assert lack of personal jurisdiction over them by the transferee court in the event that this Court transfers this case.

[2] The case dockets of these cases are attached as Exs. 3-5 to the Declaration of Sasha G. Rao ("Rao Dec."), filed herewith.

spent over three years of judicial resources on the Genius case that is related to the present case. The court in that case granted Genius' motion for summary judgment of non-infringement, and the Federal Circuit affirmed.

As explained below, a balancing of the private and public factors demonstrates that the Northern District is demonstrably the more convenient venue.  Indeed, given the complete lack of connection between Largan and the Eastern District, very little should be required to tip the balance of factors in favor of transfer.

## II.     FACTUAL BACKGROUND

### A.     HP's Connections to California and Lack of Connections to this District

HP is headquartered in Palo Alto, California, which is located within the Northern District. (*See* Declaration of Tony Baca ("Baca Dec."), at ¶ 5, filed herewith).  HP's headquarters are less than 20 miles from the Northern District's San Jose courthouse, and not significantly farther from the courthouses in San Francisco or Oakland.  (*Id*.).  HP employs approximately 1,500 employees at its headquarters.  (*Id.* at ¶ 8).

Largan's Complaint identifies several models of HP laptops, including consumer and commercial laptops and Chromebooks, and mobile workstations, as allegedly infringing.  (*See* Compl., Dkt. 1, ¶¶ 45, 55, 65, 75; hereinafter "accused HP laptops").  The accused HP laptops were developed in the Northern District and are sold nationwide by HP in every district including both the Eastern District and the Northern District.  (Baca Dec. at ¶ 6).  The camera modules in the accused HP laptops – that house the accused lenses – were selected, tested, and managed primarily by HP employees located in Taiwan.  (*Id.* at ¶ 7).  Decisions regarding sales, marketing, and financial matters related to the accused laptops are made by employees at HP's Palo Alto headquarters.  (*Id*. at ¶ 8).  HP expects that witnesses from its Palo Alto headquarters will be required to testify in this matter.  HP has identified at least the following ten employees located in

the Palo Alto area having knowledge relevant to the sales, marketing, revenues, and profits of the

accused HP laptops, including:

- Mark Sanchez, the General Manager for North American Consumer PCs, who is responsible for various aspects of the marketing and sales for HP consumer laptops and consumer Chromebooks;

- Charalampos Papapanagiotou, the Head of North America PC Commercial Category, who is responsible for various aspects of the marketing and sales of HP commercial laptops and Chrome Enterprise laptops;

- Mari Young, U.S. Retail Director of Product Marketing, who is responsible for various aspects of the marketing and sales of HP consumer laptops and consumer Chromebooks;

- Daryl Butler, Senior Marketing Director, US Consumer Personal Systems, who is responsible for various aspects of the marketing of HP consumer laptops and consumer Chromebooks;

- David Contreras, Head of U.S. Commercial Marketing, Personal Systems, who is responsible for various aspects of the marketing of HP commercial laptops and Chrome Enterprise laptops and workstations;

- Laura Crawford, Senior Finance Manager who is responsible for financial accounting for HP laptops and HP Chromebooks sales in the United States;

- Venicio Navarro, who is responsible for financial accounting for HP consumer laptops and HP Chromebooks sales in the United States;

- Steven Kissinger, who is responsible for financial accounting for HP consumer laptops and HP Chromebooks sales in the United States;

- Jessica Chong, Director of Product Management of PC, who has knowledge about HP Chromebooks; and

- William Wong, HP Product manager for consumer PC with knowledge of Chromebook development.

(*Id.*).  None of these witnesses live or work in the Eastern District, and none of the HP employees

who report to them do either.  (*Id.* at ¶ 9).  HP has never had any employees located in this District

with any decision-making responsibility for the accused HP laptops. (*Id.*).  Nor does HP have any

employees in this District who are responsible for the design, development, manufacturing, or

marketing of the accused HP laptops.  (*Id.*).  The teams of HP employees who worked on the accused

HP laptops are primarily based in Palo Alto, CA; Spring, TX; and in Taiwan. (*Id.*). HP has one

hundred and two (102) employees at its Plano, Texas.  None of those employees are responsible

for the design, development, manufacturing, or marketing of the accused HP laptops.  (*Id.* at ¶ 11).

The vast majority of HP's documents related to the design, development, marketing and sales of the accused HP laptops are located in the Northern District or elsewhere, but not in this District.  (*Id.* at ¶ 12).  HP is not aware of any documents relevant to this case or to the accused HP laptops that are physically located in the Eastern District. (*Id.* at ¶ 12). In other words, none of the information that HP will need to collect and produce will come from this District.

### B.      Largan's Connections to California and Lack of Connections to this District

Largan has a complete lack of any connection to this District.  Largan has no offices in the Eastern District of Texas, no employees located in the Eastern District of Texas, and based on our understanding, sells no products directly into the Eastern District of Texas.  All of the inventors of the asserted patents are located in Taiwan, and presumably all of Largan's corporate documents and discovery are located there as well. Largan's lack of Texas connections is unsurprising given that Largan is a Taiwanese company that makes lenses, which are used in cameras installed in laptops, smart phones, and other mobile devices manufactured in China and Taiwan.  Unlike the Eastern District, Largan does, however, have a connection to the Northern District, where Apple, one of its most significant customers, is located.  *See, e.g.*, *Largan Precision Co., Ltd. v. Genius Electronic Optical Co., Ltd.*, No., 646 Fed. Appx. 946 (Fed. Cir. 2016).  Largan also is familiar with the Northern District, having previously filed two separate patent infringement lawsuits there related to essentially the same technology at issue in this case. *See e.g.,* Rao Dec. Exs. 3-5.

### C.      Third-Party Witnesses Located in California

There are at least two significant non-parties located in the Northern District that are likely to have relevant evidence for this case:  Genius and Apple.  This evidence relates to the previous patent infringement lawsuit filed by Largan against Genius, in which Largan asserted several patents, including U.S. Patent No. 8,395,691 ("the '691 patent"), which is asserted against HP in this action.

Genius, a Taiwanese lens manufacturer, was the named defendant in that case, but Largan's primary claim was that the allegedly infringing Genius lenses had been incorporated into Apple products. Apple is located in Cupertino, California, and Genius also has an office in Cupertino (within the Northern District).  *See, e.g.*, *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105, 1108-1110 (N.D. Cal. 2015); Rao Dec. Ex. 1.

HP has a good faith belief that Apple and Genius are percipient witnesses who may have information relating to the invalidity of the Largan asserted patents (U.S. Patents Nos. 7,274,518; 8,988,796 and 9,146,378, and the '691 patent), including without limitation, information about the prior public use of the patented technology, prior sale or offer for sale of the patented technology, and prior art collected and considered in the Genius case.  HP has already served a subpoena *duces tecum* on Apple requesting information regarding Largan and Genius products offered for sale or sold to Apple, or used by Apple, that may anticipate or render obvious the claims of the asserted patents in this case.  (Rao Dec. Ex. 2).  HP anticipates that, in addition to the documents it expects to receive from Apple, the testimony of one or more Apple witnesses may be required.  HP also anticipates serving a subpoena on Genius for information relating to HP's defenses in this case.

Genius and Apple are also likely to have discoverable information related to damages and marking.  Presumably, both are licensees of Largan and may have products requiring marking with the asserted patents.  Accordingly, HP anticipates seeking discovery from Genius and Apple on both their previously-accused and current products having optical lenses, on whether any of those products are marked with Largan's asserted patents, and on any license agreements with Largan.[3]

---

[3] *See generally Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.,* No. 2019-1080, 2020 WL 808173 (Fed. Cir. Feb. 19, 2020) (holding that a patentee is time-barred from recovering pre-suit damages under 35 U.S.C. § 287 if a licensee failed to mark its product, even if there is a cessation of sales by the licensee); *Arctic Cat Inc. v. Bombardier Recreation Products Inc.*, 876 F.3d 1350, 1365-69 (Fed. Cir. 2017) (holding that an accused infringer only bears the burden of production "to articulate the products it believes are unmarked 'patented articles' subject to § 287," while the patentee bears the ultimate burden of persuasion to show compliance with § 287 for any such products so identified by the accused infringer.

III.   **LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The law of the regional circuit in which the case was originally brought governs the review of motions to transfer. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011); *In re Genentech*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009).

A motion to transfer venue should be granted if the movant shows that the transferee venue "is clearly more convenient" than the plaintiff's chosen venue.  *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*).  "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Id.* at 313.

As a threshold matter, the movant must first establish that the case could have been brought in the proposed transferee district.  *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004).  Once the threshold requirement is met, the court evaluates a series of private and public interest factors to determine whether transfer is appropriate.  *Volkswagen II*, 545 F.3d at 315. These factors are neither exhaustive nor exclusive, and no single factor is dispositive.  *Id.*

The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to ensure the attendance of witnesses; (3) the cost of attendance for wiling witnesses; and (4) all other practical problems that make trial of a case easy, expeditions and inexpensive."  *Id.* at 312.  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.* at 312.

The proposed transferee venue is "clearly more convenient" where, as here, most of the potential witnesses and relevant evidence are located in the transferee venue.  *See In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).   Indeed, "[t]he convenience of the witnesses is probably the single most important factor in a transfer analysis."  *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (quoting *Genentech*, 566 F.3d at 1343).  The presence of witnesses outside both the transferee and transferor forums, however, does not factor into the transfer inquiry.  *See In re Toyota Motor Corp.,* 747 F.3d 1228, 1340 (Fed. Cir. 2014).  Similarly, the Plaintiff's choice of venue is discounted because "Fifth Circuit precedent clearly forbids treating plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."  *In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 314 n.10); *see also Nintendo*, 589 F.3d at 1198 (same).

With regards to public interest factors, courts in the Eastern District "have consistently recognized the pronounced significance of judicial economy in the § 1404(a) analysis in patent cases." *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, Civil No. 6:09-cv-448-JDL, at *6 (E.D. Tex. July 13, 2010) (citing collecting cases).  In *Bandspeed, Inc. v. Acer, Inc.*, the Eastern District noted that "in patent cases, the 'consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."  No. 2:10-CV-215-TJW, 2011 WL 3648453 at *4 (E.D. Tex. Aug. 15, 2011) (quoting *Regents of the Univ. of Cal. v. Eli Lilly Co*., 119 F.3d 1559, 1565 (Fed. Cir. 1997)).

## IV.   ARGUMENT

### A.   Venue is Proper in the Northern District of California.

Venue is proper in the Northern District, and this action could have been brought there.  The

threshold inquiry under § 1404(a) "is whether [the] civil action might have been brought in the destination venue." *Volkswagen II*, 545 F.3d at 312. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Because HP sells the accused laptops in Northern California and HP's headquarters and principal place of business are located there, it is indisputable that this action could have been originally brought in the Northern District.

###### B.    The Private Interest Factors Weigh Heavily in Favor of Transfer to the Northern District of California.

Each of the four private interest factors favors transfer or is neutral in this case.

###### 1.    The Sources of Proof are More Easily Accessed in The Northern District of California.

Nearly all the evidence from HP related to the claims in this case will come from HP witnesses and documents located in California.  The remaining party evidence from Largan, Ability, and Newmax will all almost certainly come from Taiwan.  But no such evidence is located in the Eastern District of Texas.  "[T]he place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345.  Indeed, because "the majority of relevant evidence in patent infringement suits usually comes from the accused infringers," "[t]he ease of accessing the defendants' sources of proof weighs more heavily than the ease of plaintiff's proof." *Software Rights Archive, LLC, v. Google*, Inc., No. 2:07-cv-511-CE, 2010 WL 2950351, at *2 (E. D. Tex. July 22, 2010).[4]  Accordingly, there is no doubt that the Northern District of California provides for greater access to the sources of proof.

Here, the accused HP laptops were developed in the Northern District.  (Baca Dec. at ¶ 6).

---

[4] *See also Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012) (explaining that "an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases).

HP employees with knowledge about project development, product management, marketing, sales, and financial accounting regarding the accused products work in the Northern District or elsewhere around the world, but not in this District.  (*Id.* at ¶ 10).  Additionally, as discussed above, HP documents are either stored at HP's headquarters in Palo Alto, CA or elsewhere, but not in this District.  (*Id.* at ¶ 12).  No relevant HP employees are located in this District, nor is any relevant documentation stored here.  (*Id.* at ¶¶ 11-12).

HP's evidence is particularly important in light of Largan's positions in response to the earlier motions to dismiss for lack of personal jurisdiction filed by Ability and Newmax.  (*See* Dkt. Nos. 50, 54.)  In opposing those motions, Largan emphasized that HP allegedly provides specifications for its lenses to Ability and Newmax.  (*See id.*)  Largan also relied in its opposition (and also in its Complaint) on its pre-suit correspondence with HP, even including a table of information provided by HP in response to Largan's request for identification of lenses used in certain specific HP laptop part numbers (SKUs).  (*Id.*)  Given these and other statements by Largan relying on HP's evidence and its alleged importance, Largan cannot seriously dispute that the location of HP, its documents, and its witnesses in California should weigh heavily here in the convenience transfer analysis.

On the other hand, Largan has no connections to or evidence in Texas.  Largan's asserted patents identify only inventors located in Taiwan, and Largan's documents and witnesses presumably are located there.  To the extent Largan has any U.S. connections at all, as already discussed, those connections are in California due to its prior lawsuits there.  Certainly, Largan cannot assert that the Northern District of California is less convenient for it to produce its documents and witnesses given its choice to file and purpose its earlier lawsuits in California.

For all of these reasons, this factor weighs strongly in favor of transfer.

### 2. The Northern District of California is More Convenient and Has Subpoena Power Over Necessary Non-Party Witnesses.

Courts favor transfer when "a transferee district has absolute subpoena power over a greater number of non-party witnesses" than the transferor district. *Adaptix, Inc. v. HTC Corp.,* 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). The availability of compulsory process to secure the attendance of witnesses in the Northern District weighs strongly in favor of transfer. "The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at1345.

There are at least two categories of non-party witnesses located in the Northern District that are likely to play a meaningful role in this case: (1) Apple and Genius and their employees; and (2) former HP employees. On the other hand, there do not appear to be any third-party witnesses (or at least identifiable now) located in this District.

First, as noted above, HP has a good faith belief that Apple and Genius and their employees located in the Northern District are likely to have information relevant to this case – at least about HP's invalidity defenses, marking, damages, and their licenses and prior lawsuits with Largan. While HP does not yet know the full scope of information possessed by Apple and Genius, HP has served a subpoena on Apple and will also do so on Genius. Apple's and Genius's employees having relevant information on these issues are more than likely be located in the Northern District. Additionally, only the Northern District would have the ability to compel such Apple or Genius employees to appear at a trial. Additionally, former HP employees with relevant knowledge are likely to be still located in the Northern District because the management, tracking and decision making of HP's products has historically been centered in Palo Alto. (Baca Dec. at ¶ 5). By contrast, there is only a remote possibility that relevant former HP employees have relocated to the Eastern District. The potential existence of former HP employees in the Northern District thus

weighs, if at all, in favor of transfer.

### 3. The Northern District of California is Far More Convenient for Potential Party Witnesses.

The Northern District is far more convenient for potential witnesses given that those individuals primarily live or work in that district. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Google*, 2017 WL 977038, at *3 (quoting *Genentech*, 566 F.3d at 1343). To evaluate this factor, the Fifth Circuit applies the "100 mile rule," which provides that the venue with the shorter average distance for witnesses to travel is favored when two potential venues are more than 100 miles apart. *See Blue Spike, LLC v. Juniper Networks, Inc.*, No. 6:17-CV-16-KNM, 2018 WL 4222994, at *3 (E.D. Tex. Mar. 8, 2018) (citing *Volkswagen II*, 545 F.3d at 317).

HP employees knowledgeable about the sales, marketing, and financial performance of the accused HP laptops are all based in HP's Palo Alto headquarters. (Baca Dec. at ¶ 8). It is an "obvious conclusion" that it is more convenient for these witnesses to testify at home. *Volkswagen II*, 545 F.3d at 317. Application of the Fifth Circuit's 100-mile rule emphasizes the convenience of the Northern District for these HP witnesses.

By contrast, *no* likely HP witness resides in this District, nor is any likely HP witness within 100 miles of this Court. This factor "heavily favors transfer when a substantial number of material witnesses reside in the transferee venue and *no witnesses reside in the transferor venue*." *See Phil-Insul Corp. v. Reward Wall Sys., Inc.*, No. 6:11-cv-53 LED-JDL, 2012 WL 12836668, at *2 (E.D. Tex. Feb. 10, 2012) (emphasis added).

Largan's attempts to allege a tie to this District by referencing HP's "authorized service centers for 'Consumer Desktops and Notebooks'" and "customers/users who are residents of this District" are unavailing. (Compl., Dkt. 1, ¶ 13). The "authorized service centers" are not HP

facilities and are not staffed by HP employees.  Rather, these are third-party electronics stores, such as Best Buy, that HP has authorized to provide service and repairs for HP computers.  (Baca Dec. at ¶ 13).  Additionally, the customers or users who are residents of this District are indistinguishable from any other customer or user residing in every other U.S. district where HP products are sold including the Northern District.

For Largan and the other defendants – Newmax and Ability – all their potential witnesses would likely be coming from Taiwan.  For these international travelers, the courthouse in San Jose (or Oakland or San Francisco) would again be closer and more convenient to travel to than the courthouse in Sherman, Texas.  In any event, under applicable case law, the 100 mile rule does not apply for foreign witnesses who are located outside of the United States, so the presence of any Largan, Ability and Newmax witnesses in Taiwan or elsewhere outside of the U.S. has no bearing on this factor.  Courts have routinely found that "[w]hen a particular witness will be required to travel 'a significant distance no matter where they testify,'" then that witness is discounted for the transfer analysis.  *Genentech*, 566 F.3d at 1344.

### 4. No Practical Problems Exist with Transferring This Action to The Northern District of California.

No practical problems exist with transferring this action to the Northern District, as this case is in the very early stages of litigation.  The parties have not exchanged initial disclosures and discovery is yet to start.  *See, e.g., TransUnion Intelligence LLC v. Search Am., Inc.*, No. 2:10-CV-130-TJW, 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011) (concluding that this factor is neutral given that only limited discovery occurred).  Moreover, no infringement or invalidity contentions have been exchanged.  Given that this action is in the early stages of litigation, this factor is neutral.

### C. The Public Interest Factors Strongly Favor Transfer to the Northern District of California or are Neutral.

Each of the public interest factors also favors transfer or is neutral.

### 1.      Judicial Economy Favors Transfer.

Judicial economy factors favor a transferring this case.  The Northern District is familiar with Largan and the technology at issue, having spent over three years with Largan's patent infringement lawsuit against third party Genius relating to very similar patents and technology— including the '691 patent that is also asserted in this case.  The docket in that case includes more than 480 docket entries, including numerous hearings.  (Rao Dec. Ex. 3).  The judge in the Northern District conducted claim construction proceedings that culminated in the issuance of a Claim Construction Order, including construction of some terms from the '691 patent that were disputed in the Genius case.  *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2014 WL 5358426, at *11 (N.D. Cal. Oct. 20, 2014).  The *Genius* Court also reviewed certain *Daubert* issues and conducted a *Daubert* hearing.  *Largan Precision Co, Ltd. v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014).  The Northern District considered non-infringement issues (that included a discussion of the supply chain relating to optical lenses) and issued a summary judgment of noninfringement in Genius's favor.  *Genius*, 86 F. Supp. 3d at 1105.

To be clear, many of the same issues that arose in Largan's earlier California litigation are likely to arise here.  On the other hand, this is the first suit that Largan has filed in the Eastern District of Texas, and there is no indication that this Court has any prior experience with Largan, its patents, or its technology.  In light of the Northern District's judicial resources spent reviewing and adjudicating Largan's technology, including one of the same patents, transfer to that district would promote judicial efficiency.

### 2.      The Northern District of California Has a Significant Interest in This Action, Whereas Texas Has None.

HP is headquartered and has its principal place of business in Palo Alto, giving the Northern

District a substantial interest in deciding this action.  The local interest factor takes into account the preference to have localized interests decided at home and reviews the "factual connection" a case has with the transferee venue.  *Volkswagen I*, 371 F.3d at 206.  As the Fifth Circuit instructs, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Id*.  There is no local interest in this case by this District.  Largan does not have any Texas connection, nor do Ability or Newmax.  Accordingly, this factor strongly favors transfer.

Largan's attempts to allege a Texas connection by pointing to HP "customers/users who are residents of this District."  (Compl., Dkt. 1, ¶ 13).  But this same generic "interest" applies equally to California and everywhere else where HP's accused laptops are sold.  If anything, comparing the relative populations of the two districts, it is likely that more of the accused HP laptops have been sold in the Northern District than in the Eastern District.  Regardless, nothing about Texas residents who are customers or use HP computers is unique or provides this District with any particularized interest as compared to California or elsewhere.

Moreover, "Fifth Circuit precedent clearly forbids treating plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."  *TS Tech USA Corp.*, 551 F.3d at 1320 (citing *Volkswagen II*, 545 F.3d at 314 n.10).  Largan admits that it is a publicly traded, Taiwan-based company located in Taichung City, Taiwan.  (Dkt. 1 at ¶ 4; Dkt. 2 at 1).  Largan does not claim any ties to this District, or even to the United States, except for its ownership of various United States patents.  (See Dkt. 1 at ¶ 42).  And with respect to its patents, Largan's previous action against Genius proceeded in the Northern District of California for over three years—through claim construction, Daubert motions, and the grant of summary judgment.  See, e.g, *Genius*, 2014 WL 5358426, at *1; *Genius*, 2014 WL 6882275, at *1; *Genius*, 86 F. Supp. 3d at 1105.  Largan's choice of this venue combined with the

14

lack of ties either party has with this District illustrates the negligible interest this District has in this action.  To the extent this factor is not neutral, it can only weigh in favor of transfer.

### 3. No Administrative Difficulties Flowing From Court Congestion Exist.

There are no administrative difficulties created by court congestion, and the Northern District remains the more convenient forum.  The speed with which a case may get to trial and reach resolution is relevant under the § 1404(a) inquiry.  *Genentech*, 566 F.3d at 1347.  The most recent statistics obtained for the 12-month period ending on September 30, 2019, indicate that the median time from filing to disposition of a civil case is 8.6 months in the Eastern District and 8.7 months in the Northern District.  (Rao Dec. Ex. 6).  The median time from filing to trial of a civil case is 16.8 months in the Eastern District and 22.8 months in the Northern District.  (*Id*.).  While the Federal Circuit has noted that this factor is the "most speculative" and "case-disposition statistics may not always tell the whole story," *Genentech*, 566 F.3d at 1347, here, court congestion is relatively equal between the Eastern District and the Northern District.  As a result, this factor is neutral.

## V. <u>CONCLUSION</u>

As shown above, every private and public interest factor favors transfer to the Northern District of California or is neutral.  Accordingly, HP respectfully requests that this Court transfer this case to the Northern District pursuant to 28 U.S.C. § 1404(a).

DATED:  March 1, 2020

Respectfully submitted,
*/s/ Melissa R. Smith*
Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257
Email: melissa@gillamsmithlaw.com

*One of the Attorneys for Defendant HP Inc.*

OF COUNSEL:
Sasha G. Rao
Brandon H. Stroy
**MAYNARD COOPER & GALE, LLP**
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: 415.646.4702
Facsimile: 205.254.1999
Email: srao@maynardcooper.com
Email: bstroy@maynardcooper.com

*Attorneys for Defendant HP Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 1st day of March, 2020.


*/s/ Melissa R. Smith*
Melissa R. Smith


## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that pursuant to Local Rule CV-7(h), counsel for Defendants met and conferred with counsel for Plaintiff, and counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion.

*/s/ Melissa R. Smith*
Melissa R. Smith