# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| LARGAN PRECISION CO., LTD., § § *Plaintiff,* § v. § § ABILITY OPTO-ELECTRONICS § TECHNOLOGY CO., LTD.; NEWMAX § TECHNOLOGY CO., LTD.; AND HP § INC. § § *Defendants.* § | Civil Action No.  4:19-cv-696 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are (1) Defendant HP Inc.'s Motion to Transfer to the Northern District of California (Dkt. #60); (2) Defendant Newmax Technology Co. Ltd.'s Joinder Motion to Defendant HP Inc.'s Motion to Transfer to the Northern District of California (Dkt. #61); and (3) Defendant Ability Opto-Electronics Technology Co., Ltd.'s Joinder Motion to HP Inc.'s and Newmax Technology Co., Ltd.'s Motions to Transfer (Dkt. #63).

Having considered the motions and the relevant pleadings, the Court is of the opinion that Defendant Newmax Technology Co. Ltd.'s Joinder Motion to Defendant HP Inc.'s Motion to Transfer to the Northern District of California (Dkt. #61) and Defendant Ability Opto-Electronics Technology Co., Ltd.'s Joinder Motion to HP Inc.'s and Newmax Technology Co., Ltd.'s Motions to Transfer (Dkt. #63) should be **GRANTED**.  The Court is further of the opinion that Defendant HP Inc.'s Motion to Transfer to the Northern District of California (Dkt. #60) should be **DENIED**.

# BACKGROUND

## I. Factual Summary

This is a suit for patent infringement brought by Largan Precision Co., Ltd. ("Largan") against Ability Opto-Electronics Technology Co., Ltd. ("AOET"), Newmax Technology Co., Ltd. ("Newmax"), and HP Inc. ("HP") (collectively, "Defendants"). Largan alleges that infringing lenses manufactured and designed by AOET and Newmax were incorporated into HP laptop computers and sold throughout the United States.

Largan is a Taiwanese corporation that supplies high-performance imaging lenses for consumer electronics products, such as laptop computers, tablets, webcams, and Apple iPhones. Largan holds the four patents-in-suit-here: U.S. Patent Nos. 7,274,518 ("the '518 Patent"); 8,395,691 ("the '691 Patent"); 8,988,796 ("the '796 Patent"); and 9,146,378 ("the '378 Patent"). AOET and Newmax are both Taiwanese corporations with principal places of business in Taichung City, Taiwan. Like Largan, AOET and Newmax are each in the optical lens industry and design, manufacture, and sell optical lenses to other companies in the consumer electronics supply chain. All of AOET's and Newmax's facilities are located in Asia, including facilities in Taiwan, Vietnam, and China. HP is a Delaware corporation with its principal place of business in Palo Alto, California.

The accused products here are primarily HP laptops, developed in California, Texas, and Taiwan, which incorporated allegedly infringing lenses manufactured and developed by AOET and Newmax. AOET's and Newmax's activities with respect to this case are restricted to Asia. HP employees who worked on the accused products' development, marketing, sales, and financial accounting are located in the United States—both in Texas and California. HP employees who

provided specifications to Newmax and AOET for lenses to be incorporated into the accused products are located in Taiwan.

## II. Procedural History

On March 1, 2020, HP filed its Motion to Transfer to the Northern District of California (Dkt. #60). On March 2, 2020, Newmax filed its Joinder Motion (Dkt. #61), and on March 3, 2020, AOET filed its Joinder Motion (Dkt. #63). On March 20, 2020, Largan filed a Response to HP's Motion to Transfer and Newmax's and AOET's Joinder Motions (Dtk. #72). On March 27, 2020, HP filed a reply (Dkt. #82) and Newmax filed a reply (Dkt. #83). On April 3, 2020, Largan filed a sur-reply to Newmax's reply (Dkt. #86) and a sur-reply to HP's reply (Dkt. #87).

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 313 (5th Cir. 2008). However, there is a strong presumption in favor of a plaintiff's choice of his or her home venue, "which may be overcome only when the private and public factors [cited below] clearly point towards trial in the alternative forum." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and

fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" *Id.* (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

"The threshold inquiry when determining eligibility for transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed,' or whether all parties have consented to a particular jurisdiction." *E-Sys. Design, Inc. v. Mentor Graphics Corp.*, 4:17-CV-00682, 2018 WL 2463795, at *1 (E.D. Tex. June 1, 2018) (quoting *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004)). If the threshold inquiry is satisfied, "the focus shifts to whether the party requesting the transfer has demonstrated the 'convenience of parties and witnesses' requires transfer of the action, considering various private and public interests." *Int'l Fidelity Ins. Co. v. Bep Am., Inc., et al.*, A-17-CV-973-LY, 2018 WL 2427377, at *2 (W.D. Tex. May 29, 2018) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974)).

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Volkswagen II*, 545 F.3d at 315 (citations omitted); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). These factors are "not necessarily exhaustive or exclusive" and "none can be said to be of dispositive weight." *Vivint La., LLC v. City of Shreveport*, CIV.A. 14-00617-BAJ, 2015 WL 1456216, at *3 (M.D. La. Mar. 23, 2015) (quoting *Volkswagen I*, 371 F.3d at 203).

**ANALYSIS**

The threshold inquiry under § 1404(a) is whether the suit could originally have been filed in the destination venue. *Volkswagen II*, 545 F.3d at 312. The parties here do not dispute that this suit could have been brought in the Northern District of California. Thus, the threshold inquiry is satisfied and the Court next considers the private and public interest factors. *Id*. at 315.

**I.    Private Interest Factors**

*A.    Relative ease of access to sources of proof*

HP argues that "nearly all the evidence from HP in this case" will come from HP's Palo Alto headquarters located in the Northern District of California (Dkt. #60). HP's accused products were developed in the Northern District of California, and "HP employees with knowledge about project development, product management, marketing, sales, and financial accounting regarding the accused products work in the Northern District of California or elsewhere around the world, but not in [the Eastern] District" (Dkt. #60). Largan counters that HP failed to adduce with sufficient specificity where HP's relevant documents are located. HP stores financial and sales documents in a cloud setting, which is primarily accessible to HP employees in Texas, Taiwan, and Palo Alto. HP did not provide an estimate of how many documents are located in the Northern District of California versus "elsewhere" (Dkt. #72).

Although storing documents in a cloud setting reduces the burden of transporting documents to a selected venue, "[t]he Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.*, No. A–13–CA–706–SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (citing *Volkswagen II*, 545 F.3d at 316)). That said, this Court has held that "the location of documents is given little weight in determining proper venue unless the documents 'are so

5

voluminous [that] their transport is a major undertaking.'" *Dong Sik Yoo v. Kook Bin Im*, 4:17-CV-00446, 2018 WL 549957, at *7 (E.D. Tex. Jan. 24, 2018) (citations omitted). In patent infringement cases, greater significance is afforded to the defendant's documents, as "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. V. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D. N.Y. 2006)).

Here, HP is the only domestic party; both Newmax and AOET, as well as Largan, are Taiwanese corporations. HP will likely produce evidence from its headquarters in the Northern District of California, but HP may also access documents located within Texas, and the bulk of evidence in this case will likely come from Taiwan rather than any district in the United States. Of the documents located in the United States, it is unclear that those found in either California or Texas are so voluminous as to make either venue clearly more convenient than the other. Accordingly, this factor is neutral.

    B.    *Availability of compulsory process to secure the attendance of witnesses*

HP identifies two categories of potential third-party witnesses with knowledge relevant to this dispute, which are former HP employees and employees of both Apple Inc. ("Apple") and Genius Electronic Optical Co. Ltd. ("Genius"). Apple's and Genius's relevance to this case relates to a previous patent infringement lawsuit filed by Largan against Genius for allegedly infringing lenses incorporated into Apple products.[1] These third-party witnesses will "more than likely be located in the Northern District of California" (Dkt. #60). HP further asserts that "former HP employees with relevant knowledge are likely to be still located in the Northern District of

---

[1] *See Largan Precision Co., Ltd. V. Genius Electronic Optical Co., Ltd.*, 646 F. App'x 946 (Fed Cir. 2016) (affirming judgment of non-infringement regarding five United States patents held by Largan, including the '691 patent at issue here).

6

California" (Dkt. #60). Largan identifies specific third-party witnesses, with at least two residing in Texas and the remainder in Idaho, Utah, and Colorado (Dkt. #72). Largan further asserts that third-party witnesses with knowledge of HP's distribution network will be identified in Asia and from among employees of SMS InfoComm, located in Texas, and Ingram Micro, located in Tennessee.

A court may exercise its subpoena power to compel witnesses to attend a trial, deposition, or hearing under Federal Rule of Civil Procedure 45 if the court is:

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>   i. is a party or a party's officer; or
>   ii. is commanded to attend a trial and would not incur substantial expense."

FED. R. CIV. P. 45(c)(1).

This factor turns upon the location of third-party witnesses relative to each forum. *See Volkswagen II*, 545 F.3d at 316. "The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *U.S. Ethernet Innovations, LLC v. Samsung Electronics Co., Ltd.*, 6:12-CV-398 MHS-JDL, 2013 WL 1363613, at *3 (E.D. Tex. Apr. 2, 2013).

No party in this case identified specific third-party witnesses over which either venue has absolute subpoena power, and only Largan identified specific third-party witnesses at all. Of those who reside in Texas, none reside within 100 miles of this Court, but subpoenas still may be enforced against these individuals under Rule 45(c)(1)(B)(ii). The remaining categories of unidentified but likely third-party witnesses include employees of corporations in California, Texas, Tennessee, and Taiwan.

Ultimately, the third-party witnesses that may be relevant to this dispute are not located predominantly in either the transferor or transferee venue, nor in any specific venue within the United States. But because Largan identified specific third-party witnesses over which the Eastern District of Texas has subpoena power or over which neither forum has subpoena power, this factor weighs slightly against transfer.

  C.  *Cost of attendance for willing witnesses*

HP argues that its employees "knowledgeable about the sales, marketing, and financial performance of the accused HP laptops are all based in HP's Palo Alto headquarters" (Dkt. #60). HP further asserts that former HP employees with knowledge relevant to this dispute are likely located in the Northern District of California, and that none of its witnesses are located in the Eastern District of Texas or within 100 miles of this Court. Newmax maintains it would be more convenient for its witnesses located in Taiwan to travel to the Northern District of California than the Eastern District of Texas. Largan counters that most of the relevant witnesses for all parties are located in Asia and not the Northern District of California. Furthermore, Largan asserts that HP likely has employees at its facility in Spring, Texas with similar knowledge about the accused products as its employees in Palo Alto.

The Fifth Circuit applies the "100-mile" rule, where if "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204. "The convenience of witnesses is probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1342 (quoting *Neil Bros. Ltd.*, 425 F. Supp. 2d at 329). "Moreover, it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a

transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000) (citations omitted). In considering witnesses identified by the parties, "[a] district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 F.3d at 1343. Thus, this Court directs its inquiry into (1) who the most relevant witnesses are, and (2) where they reside. *E-Sys. Design, Inc. v. Mentor Graphics Corp.*, 4:17-CV-00682, 2018 WL 2463795, at *3 (E.D. Tex. June 1, 2018).

The allegedly infringing lenses at issue here are developed and manufactured by AOET and Newmax in Taiwan. Witnesses with knowledge pertaining to AOET and Newmax will likewise almost certainly come from Taiwan, or otherwise from outside the United States. HP provides specifications for camera modules in the accused products, and the ten-to-twelve HP employees with knowledge of this process are located in Taiwan. Current HP employees in the United States who are knowledgeable about the accused products and previous transactions between Largan and HP are located in Palo Alto, California; Spring, Texas; and Austin, Texas.

Relevant third-party witnesses include employees of Genius and Apple, relating to the previous suit between Largan and Genius. Other potential third-party witnesses are employees of SMS InfoComm, in Grapevine, Texas, and Ingram Micro, in Tennessee, as third-party members of HP's distribution network. Moreover, former HP employees who took part in prior transactions concerning shipments of optical lenses from Largan to HP are located in Houston, Texas; Austin, Texas; Salt Lake City, Utah; Fort Collins, Colorado; and Boise, Idaho.

The most significant witnesses in this case reside in Taiwan or otherwise in Asia. This includes all likely witnesses with direct knowledge of the manufacturing and development of AOET's and Newmax's allegedly infringing lenses, as well as HP employees who provided specifications for incorporation of these lenses into HP's accused products. All four parties to this

case have significant connections to Taiwan, the epicenter of the optical lens industry. Of the relevant witnesses residing in the United States, it is unclear whether most are found in any given forum or state. Current HP employees at its corporate headquarters in Palo Alto will likely testify, but HP's Chief Supply Chain Officer, as well as other HP employees knowledgeable about the accused products or Largan's relationship with HP, are found in Texas and may also provide significant testimony in this case.

International witnesses—both party and third-party—"will be required to travel a significant distance no matter where they testify." *In re Genentech, Inc.*, 566 F.3d at 1344. The significance of the numerous international witnesses here, therefore, does not weigh in favor of either the transferor or transferee venue. For witnesses in the United States, greater weight is given to the third-party witnesses. Of the third-party witnesses specifically identified, none are located in California and two are located in Texas—in Houston and Austin. Employees of Genius and Apple are most likely located in the Northern District of California but have not been specifically identified by the parties. The distribution of third-party witnesses therefore appears to be about neutral.

This dispute is not centered on either the transferor or transferee venue; it is international in both character and scope. Three of four parties reside in Asia, and witnesses located in the United States are distributed across both California and Texas, as well as other states. That HP identified witnesses in the Northern District of California but no key witnesses appear to reside in the Eastern District of Texas is significant.[2] But this is tempered by the fact that the most numerous and significant witnesses reside in Taiwan, for whom travel to either forum is equally inconvenient. As such, this factor is neutral.

---

[2] "The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

D. *All other practical problems that make trial of a case easy, expeditious, and inexpensive*

HP argues that at this early stage in the litigation, prior to initial disclosures and discovery, there are no practical barriers to transferring the case and therefore the factor is neutral. Largan argues that because neither AOET nor Newmax agrees to be subject to personal jurisdiction in the Northern District of California, an issue already decided by this Court, transfer would result in relitigation of that issue.

"Practical problems include those that are rationally based on judicial economy." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 6:09-CV-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010). When multiple lawsuits concerning the same issues are pending in either the transferor or transferee court, this factor is afforded significant weight in the transfer analysis. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

No other lawsuits concerning the issues here are pending before either the Eastern District of Texas or Northern District of California. One patent-in-suit, the '691 patent, was previously litigated in the Northern District of California; however, none of the Defendants here took part in that case, nor did the Northern District of California decide any validity issues related to that patent. On the other hand, this Court has already gained familiarity with the parties and issues in this case in deciding Defendants' personal jurisdiction challenge. Moreover, AOET indicated it plans to re-litigate its personal jurisdiction challenge if this case is transferred to the Northern District of California. Accordingly, this factor weighs against transfer.

II. **Public Interest Factors**

A. *Administrative difficulties flowing from court congestion*

HP argues that court congestion between the Northern District of California and Eastern District of Texas are "relatively equal," and that this factor is therefore neutral (Dkt. #60). Largan

11

argues that time to trial is six months faster in the Eastern District of Texas, so this factor weighs slightly against transfer.

The average speed with which a case comes to trial and resolution is a factor that the court may consider. *In re Genentech, Inc.*, 566 F.3d at 1347. But, the Federal Circuit has noted this factor "appears to be the most speculative." *Id*. at 1347. The statistics cited by the parties, ending on September 30, 2019, show the median time from filing to trial is 16.8 months in the Northern District of California and 22.8 months in the Eastern District of Texas. Although these statistics illustrate some difference in time to trial, this difference does not make one venue or the other clearly more convenient. This factor is neutral.

    B.  *Local interest in having local issues decided at home*

HP argues the Northern District of California has a greater interest in deciding this case because HP's corporate headquarters is located there, where the accused products were primarily developed. Largan counters that the allegedly infringing lenses were developed in Asia, and HP's accused products were developed not just in the Northern District of California but also in Texas and other locations, making this factor neutral.

Where there are "significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citations omitted). The mere sale of some of the accused products in any district does not militate towards one venue or another. *Volkswagen II*, 545 F.3d at 318.

There is no district where a majority of the events giving rise to this suit occurred. The lenses were developed and manufactured in Asia, and HP employees involved in providing specifications to Newmax and AOET for incorporating those lenses into HP products are located

in Taiwan. To the extent that HP's activities within the United States are relevant, HP employees responsible for development, marketing, and supply chain operations are located both in Texas and in California. But this remains a case arising predominantly from events that occurred in Taiwan, or elsewhere in Asia. Nor are the relevant events and witnesses within the United States so clustered in any one judicial district as to give that judicial district a substantially stronger interest in this case. Because more of the events giving rise to this suit appear to have occurred in the Northern District of California than in the Eastern District of Texas—specifically, the development of the accused products—this factor weighs in favor of transfer, but only slightly.

   C. *Familiarity of the forum with the law that will govern the case*

Both judicial districts are equally familiar with the law governing this case. This factor is neutral.

   D. *Avoidance of unnecessary problems of conflicts of laws*

This case does not present any problems of conflicts of laws or issues related to applying foreign law. This factor is neutral.

In sum, one factor weighs in favor of transfer, two weigh against transfer, and five are neutral. After considering all factors, Defendants have failed to meet their burden to show that transfer is clearly more convenient and in the interest of justice. The motions to transfer venue should be denied.

## CONCLUSION

For the foregoing reasons, Defendant Newmax Technology Co. Ltd.'s Joinder Motion to Defendant HP Inc.'s Motion to Transfer to the Northern District of California (Dkt. #61) and Defendant Ability Opto-Electronics Technology Co., Ltd.'s Joinder Motion to HP Inc.'s and

14

Newmax Technology Co., Ltd.'s Motions to Transfer (Dkt. #63) are **GRANTED**, and Defendant HP Inc.'s Motion to Transfer to the Northern District of California (Dkt. #60) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 10th day of June, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE